McWILLIAMS, Circuit Judge.
The Interstate Commerce Commission (ICC) brought an action against Crouch Freight Systems, Inc., to enjoin the latter from transporting shipments between the Dallas-Fort Worth, Texas area and the Oklahoma City, Oklahoma area, on the ground that Crouch did not have the authority to do so. Trial was to the court and was based entirely on documentary evidence and stipulations. The trial court entered a permanent injunction against Crouch. The latter filed a motion to amend the injunction, contending that the injunction, as entered, was overly broad in that it included “overhead traffic”[1] as well as “local traffic,”[2] and that, based on the record, the injunction should only have covered “local traffic.” Thereafter, certain ex parte communications occurred between the trial judge, or his law clerk, and counsel for the ICC. This resulted in an amended injunction which limited its application to “local traffic.”
Crouch filed a notice of appeal from the amended injunction. One matter urged as ground for reversal related to the ex parte communications between the trial judge, or his law clerk, and counsel for the ICC. By order we vacated the amended injunction. Our order read as follows:
The circumstances attending the amendment to the judgment in this case were such that the judgment of that court, as amended is set aside and vacated. The cause is remanded to the United States District Court for the Western District of Oklahoma. On remand the court shall consider such additional evi *681 dence, if any, as is offered by any party and shall consider in adversary proceedings, after notice, all objections to its findings of fact and conclusions of law and to its judgment.
On remand, the case was transferred to a different judge for the further proceedings mandated by the above order. The further hearing was both after notice and adversary in nature. Neither side offered any evidence, although certain answers to interrogatories designed to counter the charge of either judicial misconduct or misconduct on the part of counsel were offered by the ICC. Crouch voiced its various objections to the findings of fact and conclusions of law, as well as to the amended injunction, as previously made and entered by the judge who first heard the case. The successor judge then held that the amended injunction, as previously entered, was not tainted by misconduct on the part of judge or counsel; overruled, in effect, the objections to the findings and conclusions; and reentered the amended injunction theretofore entered by the judge who first heard the matter. Crouch now appeals again.
Crouch initially complains that the mandate in our earlier order setting aside the amended injunction was not complied with on remand. Crouch suggests that, by our order, we, in effect, found “fraud” to the end that on remand the entire case should have been dismissed. We do not agree. Neither the word “fraud,” or anything equivalent thereto, is to be found in our order. Rather, it was the “circumstances” surrounding the entry of the amended injunction which prompted us to set aside the judgment. It is at once obvious, then, that we were concerned about the “appearance,” rather than the existence of actual fraud. Suffice it to say, on the record there is no showing of fraud or misconduct on the part of anyone, judge or counsel, which would justify the relief now urged upon us by counsel, namely, an outright dismissal of the entire action.
Nor do we find that the successor judge in any other manner failed to comply with our mandate. Our order vacated the amended injunction, but left standing the findings and conclusions. In this latter regard, we directed the court, whether it be the same judge or a different one, to hear all objections to the findings and conclusions. This the successor judge did, and counsel for Crouch argued at length concerning the error which he perceived in the findings and conclusions as previously made. The successor judge then, in effect, overruled these objections, refused to modify or change the findings and conclusions as previously made, and entered an injunction which was the same as the amended injunction entered by the first judge in the case. In short, we find no procedural irregularity which would justify setting aside the injunction which is the subject matter of the present appeal.
On oral argument, counsel for Crouch, while not abandoning his argument concerning judicial irregularity, did indicate that he preferred to have the controversy disposed of on its merits. This we propose to do.
Crouch, a Missouri corporation with its principal place of business in Elwood, Kansas, conducts an extensive trucking business in several midwestern states. The particular operation which the ICC seeks to enjoin is the through transportation of freight by Crouch between Dallas-Fort Worth and Oklahoma City. On February 4, 1974, Crouch obtained, with ICC approval, a temporary lease of authority held by another certificated carrier, Bestway Freight Lines, Inc. Bestway’s authority, under which Crouch is operating, authorizes traffic between Dallas and Lawton, Oklahoma, and a number of intermediate points, including Anadarko, Oklahoma. Bestway’s authorization is subject to several restrictions, one of which is the root of the present controversy. That restriction reads as follows:
RESTRICTION: The service authorized herein is subject to the following conditions:
Said operations are restricted against the transportation of shipments moving between Dallas and Fort Worth, Tex., *682 and their respective commercial zones, as defined by the Commission, on the one hand, and, on the other, Oklahoma City, Oklahoma, and its commercial zone, as defined by the Commission.
On May 21, 1974, Crouch was authorized by the ICC to exercise temporary control of Caddo Express, Inc., another certificated carrier. Caddo’s authority provides, in part, for traffic between Oklahoma City and Richards Spur, Oklahoma, and several intermediate points, including Anadarko, Oklahoma.
In transporting freight between Dallas-Fort Worth and Oklahoma City, Crouch relies on the authority of both Bestway and Caddo, there being a so-called “interlining” of freight between Crouch and Caddo at Anadarko, Oklahoma. Although there may be some exceptions, it is our understanding that, in the main, the movement between Dallas-Fort Worth and Oklahoma City is one continuous movement, with the freight being transported between Dallas-Fort Worth and Oklahoma City on the same trailer, pulled by the same tractor, and being driven by the same driver. About the only noticeable difference between Crouch’s operation and that of a single carrier was a paper division of the revenue in the home office of Crouch in Elwood, Kansas.
Considerable emphasis has been made, both in the trial court and here, of the difference between “tacking” and “interlining.” It is apparently agreed that we are here concerned with interlining. In other words, Crouch transports the freight from Dallas-Fort Worth to Anadarko, Oklahoma, and then “interlines” with Caddo and continues on through to Oklahoma City, Oklahoma. “Interline” connotes a joining of forces with another carrier which, under its own authority, will transport the freight on through to final destination. “Tacking” occurs when the same carrier combines two of its own certificates of authority so as to make a continuous shipment over routes granted by each certificate. “Tacking” did not occur in the instant case, because Crouch was acting under Caddo’s authority in its traffic between Oklahoma City and Anadarko. If Crouch itself had authority to transport between Oklahoma City and Anadarko, then Crouch would be “tacking” in Anadarko, and not “interlining.” Crouch argues that though the restriction in the Bestway authority may well forbid tacking in Anadarko, it does not forbid interlining. We do not agree.
We think this controversy is resolved by a careful reading of the restriction in Bestway’s certificate of authorization. By that certificate, Bestway, and now Crouch, is authorized to transport goods between Dallas-Fort Worth and Anadarko, Oklahoma, but such operation is subject to a restriction against the transportation of shipments between Dallas-Fort Worth and Oklahoma City. The restriction is, in effect, against the further transportation of freight, brought under the Bestway authorization from Dallas-Fort Worth to Anadarko, from Anadarko to Oklahoma City. We agree with the trial court that the restriction is couched in understandable language and forbids using the Bestway authority in connection with through shipments from Dallas-Fort Worth to Oklahoma City, whether there be tacking or interlining at Anadarko. The restriction is against transportation, regardless of how accomplished.
Counsel argues that since the restriction itself does not use the word “interline,” interlining is not forbidden. This is too narrow a reading. ICC agrees that the restriction does not forbid interlining, per se. Interlining is only forbidden if such results in a transportation of shipments between Dallas-Fort Worth and Oklahoma City. If it does, then it is subject to the restriction in Bestway’s authority.
Although it is not decisive of the present dispute, we are advised that when Bestway was operating under its own authority between Dallas-Fort Worth and Anadarko, it did not attempt to interline at Anadarko and continue shipments between Anadarko and Oklahoma City.
No reported cases have been drawn to our attention which have bearing on our precise problem. ICC decisions are relied on by both parties. Fox-Smythe Transpor *683 tation Co. Extension-Oklahoma, 106 M.C.C. 1 (1967); Sims Motor Transport Lines, Inc., 72 M.C.C. 355 (1957); Anniston Motor Express, Inc., 63 M.C.C. 637 (1955). Crouch states that such decisions show that a restriction of the present type forbids tacking, but not interlining. Such is, in our view, an overly narrow reading of those decisions. The present controversy turns on a reading of the restriction itself, the plain import of which is that the Bestway authorization to transport shipments from Dallas-Fort Worth to Anadarko may not be used to transport goods from Dallas-Fort Worth to Oklahoma City.
Other matters raised here by Crouch have been considered, but have no pertinency to the present case.
Judgment affirmed.

. “Overhead traffic” in this instance refers to traffic between Dallas-Fort Worth and Oklahoma City which has an origin or destination other than one of the named cities.

. “Local traffic” in this instance refers to traffic originating in Dallas-Fort Worth and terminating in Oklahoma City, or vice versa.