In re Harold R. ZIMMER, Jr., Debtor.

Mary R. ZIMMER, Plaintiff,

v.

Harold R. ZIMMER, Jr., Defendant.

Bankruptcy No. 1–82–0228.

United States Bankruptcy Court, S.D. Ohio, W.D.

Feb. 9, 1983.

H. Clifford Bauer, Cincinnati, Ohio, for plaintiff.

Walter S. MacKay, Cincinnati, Ohio, for defendant.

Arthur J. Schuh, Cincinnati, Ohio, trustee.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Defendant is the debtor in the related bankruptcy case, having filed a petition for relief under Chapter 7 of the Bankruptcy Code. This adversary proceeding concerns the dischargeability of a debt under 11 U.S.C. § 523(a)(5). The parties stipulated that this court would decide only the question of dischargeability. The matter came on for trial at the conclusion of which we reserved decision. The parties stipulated to certain facts which we incorporate into the following findings of fact:

1. Mary R. Zimmer (plaintiff) and Harold R. Zimmer (defendant), were married on June 4, 1971.

2. No issue resulted from the marriage.

3. Defendant since approximately 1968 up to the present time, has been employed by Procter and Gamble as a "processing operator." Defendant's income for 1980 was approximately $38,000.00 and for 1981 was approximately $30,000.00.

4. Plaintiff at the time of the divorce, was employed by Kraft, Inc. at an annual salary of $10,500.00. Plaintiff also is a licensed real estate agent. Her income from this occupation was approximately $2,000.00 in 1980 and $400.00 in 1981.

5. The parties received a Decree of Dissolution of Marriage from Butler County Court of Common Pleas on September 24, 1981.

6. The parties had signed a Separation Agreement ("Agreement") on June 24, 1981. The Agreement was incorporated as part of the Decree of Dissolution.

7. The Agreement under the heading "Support For Wife," provides that the defendant is to endorse over to the plaintiff his semi-annual supplemental checks from his employer. The net value of each check is approximately $650.00 and such payments are to continue through the July 1984 payment. Under this provision the defendant is also required to endorse over to the plaintiff his monthly check from the United States Army, which averages approximately $200.00. These checks are to be turned over up to and including the time that defendant is permanently discharged from the U.S. Army Reserves.

8. The Agreement further provides as follows:

(5) INTERIM DEPOSITS AND LIVING EXPENSES. Until the real property at 3341 Greenwich Drive is sold and the closing with respect to said property is held, the husband shall deposit $275.00 per week and his monthly payment from the United States Army Reserves in the parties' joint checking account (# 397–704–8). From the fund created thereby, the wife shall pay all current living expenses of both parties, incurred before June 4, 1981, including but not limited to the mortgage payment on the real property and the monthly payments with respect to the 1977 Oldsmobile Delta Royale and the 1981 Buick Century. It is understood that this fund is not to be used for extraordinary expenses (i.e. expenses of a nature unlike those incurred by the parties during the six months preceding the execution of this agreement) except upon the mutual agreement by the parties. Neither party shall draw any amount out of this fund for undisclosed personal uses or to deplete the balance on hand. Upon the closing with respect to the real prop-

erty, any remaining amount in this joint checking account shall become the property of wife free and clear of any claim from husband.

9. On or about January 26, 1982 plaintiff received a judgment from the Butler County Court of Common Pleas, ordering the defendant to pay her the sum of $1,840.89. That court found that the defendant had failed to make the $275.00 weekly payment from November 20, 1981 through January 29, 1982, and in addition had failed to turn over his February 1982 Army Reserves check in the amount of $200.00. Further, the court found that the defendant failed to deposit a Procter and Gamble supplemental check in the approximate amount of $600.00 and that the defendant owed various other amounts. The court found that the total amount owed by the defendant was $4,109.53. Set-off against that amount were payments made by the defendant directly to creditors totalling $2,268.64.

10. On March 3, 1982, the defendant filed a petition, in this court, for relief under Chapter 7 of the Bankruptcy Code.

11. The real estate located at 3341 Greenwich Drive sold after being on the market for approximately two and one-half years.

The parties have agreed that the supplemental Procter and Gamble checks as well as the United States Army checks, represent support payments in the nature of alimony and that such obligations are nondischargeable and are the responsibility of the defendant. The parties further agree that the only issue facing the court is whether the $275.00 weekly deposit/payment referred to in paragraph 5 of the Agreement, is dischargeable under 11 U.S.C. § 523(a)(5). Section 523 provides in pertinent part that,

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, mainte-

nance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

In this action under § 523(a)(5), plaintiff has the affirmative burden of proving the existence of a debt and that the debt in question is in the nature of alimony, maintenance, or support. In order to carry out that burden in the present circumstances, plaintiff would have to show for instance, that her continued residence in the marital home depended upon the mortgage payments being made and that she had indeed made such mortgage payments. That is, if plaintiff had shown that in the absence of defendant's payments into the fund, she had to advance funds herself in order to remain in occupancy, this might have satisfied the requirement of the statute. It would have shown the existence of a debt, and that the debt was in the nature of alimony because it arose in order to provide a place for her to live. We have defined alimony as "an allowance for support and maintenance," and as "a substitute for marital support." *In re Diers,* 7 B.R. 18, 21 (Bkrtcy.S.D.Ohio, 1980). Providing shelter for an ex-wife is clearly in the nature of alimony as support and maintenance of the former spouse.

On the present record, however, it is entirely possible that plaintiff remained in possession, was provided a home until the house was sold, notwithstanding that mortgage payments were not made. Indeed, the indications are consistent with that statement for we think it fair to infer from the present record that to some extent, defendant was not making the payments into the fund required by para. (5) of the Agreement because plaintiff was not paying the

obligations for which that fund was intended. That could have been true of mortgage payments. It cannot then be held that plaintiff has proved her case, for there is no evidence, first, of a debt owing plaintiff, which, secondly, had for its purpose the provision of alimony, maintenance or support. See *In re Hileman,* 24 B.R. 397 (Bkrtcy.S.D.Ohio, 1982.)

We must therefore find the issues for defendant and dismiss the complaint.