**In re James Harold DEATHERAGE, Jr. a/k/a J. Harold Deatherage, Jr. a/k/a Hal Deatherage, Debtor.**

**James Harold DEATHERAGE, Jr., Plaintiff,**

**v.**

**Barbara Aileen WALLACE Defendant.**

**Barbara Aileen WALLACE Plaintiff,**

**v.**

**James Harold DEATHERAGE, Jr. Defendant.**

**Bankruptcy No. 3–84–01809. Adv. Nos. 3–85–0141, 3–85–0603.**

United States Bankruptcy Court, E.D. Tennessee.

Nov. 25, 1985.

Stair & Stair, Richard Stair, Jr., Knoxville, Tenn., for debtor.

Rainwater, Humble & Vowell, Donald K. Vowell, Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the debtor's obligation pursuant to an irreconcilable differences divorce decree to pay his former wife $96,000.00 in 121 consecutive monthly installments comes within the Bankruptcy

Code's § 523(a)(5)[1] exception to discharge for alimony, maintenance, or support.

## I

After twenty-two years of marriage the defendant wife[2] and debtor husband separated in March 1982 and subsequently obtained an irreconcilable differences divorce on December 14, 1982. The parties had two children, a son who had reached the age of majority at the time of the divorce and a daughter who was fifteen years old at the time of the divorce. Defendant retained custody of the minor daughter after the parties' separation and divorce. Defendant worked during the marriage. At the time of the divorce she was employed as a secretary at a local department store. According to her 1982 tax return she earned $10,914.00 in 1982. She is currently employed at the same job.

At the time of the divorce the debtor had a bachelor's degree in mining engineering and a master's degree in engineering mechanics. During the marriage he worked as a structural engineer, a senior structural engineer, and a project manager, eventually earning approximately $24,000.00 a year. At the time of the divorce he had become the president and a 30% shareholder in V.L. Nicholson Company, a company that has since filed bankruptcy. He owned stock in an entity known as Taurus Construction, Inc. and in an architectural consulting firm, J.H. Deatherage Company. He also held an interest in a partnership owning apartments in Oneida, Tennessee. In a financial statement prepared March 1, 1982, (Ex. 4) the debtor valued his non-marketable securities in V.L. Nicholson Company and Tau-

rus Construction, Inc. at $102,849.00 and $26,000.00 respectively. He valued his equity interest in the real estate at $35,640.00. He valued the parties' residence at $80,000.00, subject to a $24,300.00 first mortgage. The statement indicated various liabilities amounting to $99,208.00.

The evidence regarding the debtor's 1982 income is unclear. Two conflicting tax returns were submitted as exhibits. Exhibit 6 showed an adjusted gross income of $72,286.00. Exhibit 3 showed an adjusted gross income of $49,534.00 (essentially as a result of the removal of certain capital gains and rent and partnership income items appearing on Ex. 6). However, the debtor testified that he was "quite positive" that the lower return was the one actually submitted to the I.R.S.

The parties' final judgment of divorce incorporated an agreement entitled "Alimony, Custody, Support, And Property Settlement Agreement." This agreement provided that defendant would receive the following: (1) $2,000.00 in cash within 90 days of the agreement, (2) $96,000.00 "alimony in solido" payable in 121 monthly installments of $800.00 for 108 months and then $584.62 for the remaining 13 months, (3) the parties' residence (subject to the $24,300.00 first mortgage), (4) the household furniture, fixtures and contents, (5) a 1978 Oldsmobile, (6) "periodic alimony" of $1.00 per year (or alternatively, at the debtor's option, a disability insurance policy insuring defendant). Further, the debtor was to hold defendant harmless from all pre-separation debts and from any debts related to the debtor's business, whenever incurred.

---

**1.** This section provides:
    (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

    .    .    .    .    .

    (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—

    .    .    .    .    .

    (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....
11 U.S.C.A. § 523(a)(5) (West 1979 & Supp. 1985).

**2.** For convenience, in this consolidation of two adversary proceedings (one instituted by the debtor and one by his former wife) the court will refer to the debtor's former wife as "defendant."

Under paragraph 6 of the agreement the debtor was to pay the minor daughter's high school tuition and school-related expenses "which sum ... shall be deemed as child support." The debtor was also to maintain hospitalization insurance for the daughter and to be responsible for her "major medical expenses." Ex. 2, ¶ 12. Paragraph 11 provided that the defendant would, "if the alimony in solido award ... is paid to her, be obligated to pay for all other child support obligations of the minor daughter of the parties, excepting major medical expense and the high school educational cost provided for above."

With regard specifically to the $96,000.00 "alimony in solido" award, the debtor was to reimburse defendant for the amount of income tax she incurred as a result of the inclusion of the monthly installments in her taxable income. Paragraph 2. B. provided further:

> The above provisions relating to alimony in solido (including Federal Income Taxes to Wife by reason thereof) have been negotiated and contractually agreed upon in consideration of and with knowledge by both parties that valuable business and property interest [sic] have been surrendered to Husband by this agreement. Accordingly, it is agreed that the alimony in solido award shall not be subject to adjustment or modification due to any change of circumstances. Said alimony in solido award and judgment shall survive remarriage of Wife, should same occur. The parties agree that the only event that shall satisfy the alimony in solido (including Federal Income Taxes as herein provided) and judgment shall be payment in full thereof by Husband directly or on his behalf.

The agreement required the debtor to maintain as security for the alimony in solido award a $100,000.00 life insurance policy on his life with defendant as primary beneficiary.

Not surprisingly, the parties characterize the negotiations leading up to the agreement quite differently. Defendant testified that she discussed her living expenses with the debtor. She submitted into evidence (Ex. 8) an expense summary purporting to be a reconstruction similar to a budget she prepared at the time she and the debtor were negotiating the agreement. According to defendant, she concluded she needed approximately $1,000.00 per month in addition to her income as a secretary. She indicated she discussed this figure with the debtor and told the debtor she would be willing to accept a lump sum figure. She also said she discussed a need for child support and that the parties, after consulting attorneys, decided to designate the payments as alimony for tax reasons. She maintained essentially that her understanding was that she would get the house and a car and $800.00 a month to live on and that he would get "everything else." As defendant put it, "I didn't know what all he had—I knew what I needed to live on."

The debtor, on the other hand, described the negotiations as an effort to "split up" the parties' net worth—the defendant to receive the house, the car and roughly $100,000.00, he to keep the business interests. The debtor testified that defendant's initial demand was for $100,000.00 in a lump sum and that the monthly installments were agreed upon because he could not obtain such an amount of cash without liquidating his business interests. The debtor testified that there was little discussion ("almost none") regarding child support and that it was the parties' understanding that he would provide insurance, schooling, and medical expenses while defendant would provide food, shelter, and clothing. The debtor denied any intent that the payments were intended as support or anything other than a division of property.

However, in response to a Petition for Contempt and Modification (Ex. 10) filed by defendant in state court, the debtor answered as follows:

> Defendant [i.e. the debtor] denies that there has been a material change of circumstances of the parties since they entered into the property settlement agree-

ment, and, therefore, denies that there should be a modification of the agreement which was approved by the Court. Moreover, your defendant avers that the parties were both represented by competent counsel and that the agreement was entered into with a full knowledge and information between the parties that the defendant was offering to pay more money as alimony rather than paying part alimony and part child support for tax reasons. The fact of the matter is that the parties agreed upon $800.00 per month and called it all alimony for tax advantages to your defendant which enabled the defendant to give to the plaintiff more money each month than he could have given to plaintiff by paying child support if it were broken down as part alimony and part child support. Paragraph 11 of the property settlement agreement also provided as follows:

"That Wife shall, if the alimony in solido award of Ninety-Six Thousand Dollars ($96,000.00) is paid to her, be obligated to pay for all other child support obligations of the minor daughter of the parties, excepting major medical expense and the high school educational cost provided for above."

*It is clear from this provision of the agreement that the plaintiff [i.e. the wife] was well aware of the fact that in lieu of child support, she was receiving some $96,000.00 in alimony in solido* and for this she agreed to be obligated to pay for all the other child support obligations for the minor daughter of the parties except for the child's major medical expenses and for certain educational costs which defendant did agree to pay in addition to the substantial alimony indebtedness.

Ex. 11, ¶ 7.

Both parties testified that the decision to designate the payments as "alimony as soli-do" was based upon the advice of counsel and the desire to render the payments deductible for purposes of reducing the debtor's federal income taxes.

## II

■ Exceptions to discharge are strictly construed in favor of the debtor. A creditor objecting to the dischargeability of a debt bears the burden of proof that the debt is properly within one of the statutory exceptions. *Dial v. Presler, (In re Presler)* 34 B.R. 895 (Bankr.M.D.Tenn.1983). What constitutes alimony, maintenance, or support will be determined under federal bankruptcy law. S.Rep. No. 989, 95th Cong., 2d Sess. 79, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5865; H.R. Rep. No. 595, 95th Cong., 1st Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6320. *See also Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th Cir.1983).

The critical question is whether the obligation in question is truly in the nature of support or merely in the nature of a property settlement, i.e. a division of assets and liabilities. In the Pre-Trial Order entered on May 16, 1985, this court bifurcated the trial of this matter according to the principles set out in *Long v. Calhoun.* The Sixth Circuit enunciated in *Calhoun* a three-pronged test to be applied in determining the extent, if any, to which a debtor's assumption of debts may be found to be in the nature of support and, thus, nondischargeable. Although in the instant case the court has before it an obligation to make certain payments of money to the spouse rather than an obligation to assume certain debts, the court will apply a similar analysis here.[3]

Under *Calhoun* the court must initially ascertain "whether the state court or the

---

**3.** However, this court need not, and does not, read *Calhoun* to require the bankruptcy court to act as a "super-divorce" court, *Calhoun,* 715 F.2d at 1110 n. 12, for the purpose of reviewing the correctness and reasonableness of state court awards which clearly are solely in the nature of support, such as standard child support payments or modifiable periodic alimony. The *Calhoun* test is intended only to function as a tool to distinguish the nondischargeable support aspects from the dischargeable property settlement aspects of a hybrid obligation having characteristics of both.

parties to the divorce *intended* to create an obligation to provide support." *Calhoun*, 715 F.2d at 1109. If the court or the parties did not intend to create an obligation to provide support, "the inquiry ends there." *Id.* The court may consider "any relevant evidence." *Id.* Here, the court finds the following factors persuasive of an intent to provide support:

(1) the defendant's demonstrated need for support at the time of the divorce decree;

(2) the periodic nature of the payments;

(3) the duration of the marriage (22 years);

(4) the relative educational levels and work skills of the parties;

(5) the significant disparity in the parties' respective incomes;

(6) the existence of a minor child to the marriage;

(7) the credibility of the parties' respective testimony regarding the role which support considerations played in the parties' negotiation of the agreement;[4]

(8) the provision in the agreement for minimal or substantially reduced support obligations which would have been inadequate absent the obligation in question;

(9) the relinquishment by plaintiff of rights to support in reliance on the performance of the obligation in question. *See generally In re Coffman*, 52 B.R. 667, Bankr.L.Rep. (CCH) ¶ 70,741 at 87,686 (Bankr.D.Md.1985).

■ The court finds the last two factors particularly significant here. The agreement provided for periodic alimony of only $1.00 per year. Further, paragraph 11 explicitly provided that defendant would *"if the alimony in solido award ... is paid*

to her, be obligated to pay for all other child support obligations of the minor daughter" (emphasis supplied) except the major medical expenses and high school educational costs which the debtor had agreed to pay. In short, it is clear that the parties intended the payments in question to function in lieu of greater child support and periodic alimony obligations. It is beyond doubt that defendant relinquished rights to greater child support and periodic alimony payments in reliance on this intended function of the award. This court is thus persuaded that the parties intended to create an obligation to provide support only to the extent that the monthly installments of the alimony in solido award served the function of and replaced child support and periodic alimony (i.e., alimony in futuro).

To the extent that the debtor's obligation under the agreement exceeds this limited intended function, it is dischargeable in bankruptcy. In Tennessee, absent a specific contractual undertaking going further,[5] the parental duty to support the child terminates when the child reaches eighteen years of age, the age of majority. Tenn. Code Ann. § 1–3–113 (1985); *Weinstein v. Heimberg*, 490 S.W.2d 692, 698 (Tenn.App. 1972). In Tennessee, alimony is an allowance for the sustenance of a spouse after divorce. The needs of the recipient spouse and the ability of the other to pay are the dominant factors to consider in awarding alimony. *Aleshire v. Aleshire*, 642 S.W.2d 729 (Tenn.App.1981); Tenn.Code Ann. § 36–5–101(d) (Supp.1985). Consistent with these fundamental considerations, periodic alimony remains subject to both retrospective and prospective modification. Tenn. Code Ann. § 36–5–101 (Supp.1985). Although alimony in futuro payments do not ipso facto terminate upon the recipient spouse's remarriage, the supporting spouse

---

**4.** In respect to this consideration the court notes that the debtor's contentions at trial conflict markedly with his representations in paragraph 7 of Ex. 11 (Answer to Petition for Contempt and Modification).

**5.** In the instant case the debtor did not enter into a specific contractual undertaking to provide postmajority educational expenses. Thus,

the court does not have before it the question of the dischargeability of such an undertaking. *Cf. Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984) (absence of legal duty to provide for adult son's education did not preclude contractual undertaking to pay for son's college education from being in the nature of support and nondischargeable).

may file for relief from payments coming due after the remarriage. The state courts may grant such relief retroactively. *Bray v. Bray*, 631 S.W.2d 136 (Tenn.App.1981).

However, the parties' agreement specifically provides that the debtor's obligation to pay the alimony in solido installments shall survive defendant's remarriage and shall not be subject to modification due to any change in circumstances. These provisions clearly exceed the limited support function (i.e. the replacement of child support and periodic alimony) which this court has concluded the parties intended the debtor's obligation to serve. Consequently, these provisions, purporting to insulate the debtor's obligation from modification or termination based upon remarriage or change in circumstances, are dischargeable in bankruptcy.

Having ascertained the extent to which the parties intended to create an obligation to provide support, the court will proceed with the second part of the bifurcated hearing for the purpose of making the remaining two inquiries under the *Calhoun* analysis.

In accordance with Bankruptcy Rule 7052, this memorandum constitutes findings of fact and conclusions of law.