In re John DOE[1], Debtor.

Doris B. TRUHLAR and Robert J. Truhlar, d/b/a Truhlar and Truhlar, Attorneys, Plaintiffs,

v.

John DOE, Defendant.

Ann DOE, a Minor, by Mother and Next Friend, Jane DOE, and Jane Doe, Individually, Plaintiffs,

v.

John DOE, Defendant.

Bankruptcy No. 88–22243B.
Adv. Nos. 88–0154, 88–0155.

United States Bankruptcy Court, W.D. Tennessee, W.D.

Nov. 18, 1988.

---

**1.** In the event of any publication of this opinion, the Court will substitute a nondescript name for the debtor and will delete any reference to names of some parties in the adversary proceedings or in the text of the opinion. Because sexual abuse against a minor child is involved, the Court wishes to protect the child from any publicity and the Court wishes to comply with the spirit of confidentiality established for such abuse cases by Tennessee Code Annotated § 37–1–612. Therefore, the record in this case and adversary proceedings will be sealed pending further order of the Court. *See* 11 U.S.C. § 107(b)(2) and Bankruptcy Rule 9018.

Robert J. Truhlar, Littleton, Colo., for Truhlar & Truhlar, and for plaintiffs in Adv. No. 88–0154.

Bruce M. Kahn, Memphis, Tenn., for the Minor Child.

Randall K. Brooks, Memphis, Tenn., for debtor.

## MEMORANDUM OPINION AND ORDER ON COMPLAINTS TO HOLD ATTORNEYS' FEES AND COSTS NONDISCHARGEABLE

WILLIAM H. BROWN, Bankruptcy Judge.

The two complaints filed in this Chapter 7 case arise from Colorado state court judgments against the debtor/defendant. In adversary proceeding number 88–0155, the defendant and plaintiffs agreed to submit a consent order that the medical expense claims of and for the minor child were to be nondischargeable debts, and the defendant did not dispute that the ongoing child support of $350.00 per month, ordered by the Colorado court, was excepted from discharge under § 523(a)(5) of the Bankruptcy Code. However, at the trial on October 17, 1988, the parties submitted to the Court the issue of whether $2,220.86 in costs incurred by the plaintiffs in adversary proceeding number 88–0155 were nondischargeable. In adversary proceeding number 88–0154 the issue is whether an attorneys' fee awarded by the Colorado court to Truhlar and Truhlar, attorneys for the minor child and former spouse of the defendant, was a nondischargeable debt.

The dischargeability complaints present issues of fact and law under §§ 523(a)(5) and (6), and are core proceedings under 28 U.S.C. § 157(b)(2)(I). The following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## CASE PROCEEDINGS, HISTORY AND FINDINGS OF FACT

The voluntary Chapter 7 petition was filed on March 25, 1988, with the debtor listing among his creditors the plaintiffs in these two adversary proceedings. Except for one secured debt and three unrelated unsecured debts, the balance of the debts listed on the debtor's schedules were related to the litigation in Colorado. The debtor and the mother were previously married, having one child of the marriage, Ann Doe, born September 4, 1981. The spouses were divorced in Clayton County, Georgia on September 21, 1981. (Ex. 2) A "Final Order On Custody And Visitation" was entered by the Georgia court on September 19, 1983, awarding permanent custody to the mother, with the father/debtor given certain specific visitation. Also, the father was ordered to pay support. The testimony of the mother was that no support was actually paid until May 1983, except for $340.00 paid after entry of an interlocutory

decree, and the father had not regularly exercised his allowed visitation.

The mother was unaware of the entry of the "Final Order On Custody And Visitation" until it was shown to her by the debtor in 1984, by which time the mother had moved with the child to Colorado. The mother, through her attorney Mr. Truhlar, filed a "Petition for Modification of Visitation" in the District Court in Denver, Colorado, seeking "in the best interest of the minor child," to limit the child's visitation with the father. (Ex. 2) The child at that time was three years old, and the mother stated that she wished to set up reasonable visitation, without requiring frequent travel for the young child. The debtor then and now worked for an airline company and could receive free or inexpensive travel from Atlanta, where he worked, to Denver. (The debtor had subsequently moved to Memphis, Tennessee.) The father responded to the mother's petition in Colorado with his own "Motion to Reduce Child Support," seeking to reduce the Georgia ordered $350.00 per month and alleging a "serious, substantial and continuing change of circumstances rendering the previous order unconscionable." (Ex. 3)

Subsequent to these state court filings but prior to a judicial hearing thereon, the mother consented to a one week visit by the child in Georgia and the child did visit there from September 5, 1984 to September 13, 1984. Upon her return to Denver, the child reported to the mother that her father, the debtor, had sexually abused her. The mother contacted Mr. Truhlar, who advised her to report the allegation to authorities. She did this and also filed a "Verified Motion for Temporary Restraining Order" in the Colorado District Court. (Ex. 4) Attached to that Motion was a written report from the University of Colorado Health Sciences Center concluding that the child's history of the alleged abuse was "highly credible." That Center recommended psychiatric evaluation and therapy for the child "to help her deal with the anxiety and guilt surrounding these assaults."

A temporary restraining order was issued by the Colorado Court, restraining any visitation by the father until a full investigation and until that Court had issued appropriate orders. (Ex. 4) The mother also moved for modification of the visitation and for the issuance of permanent orders concerning the visitation, (Ex. 7) and she moved for an increase in child support. (Ex. 6) A proposed stipulation for modification of visitation was submitted to the debtor's attorney by the mother's attorneys. (Ex. 5) Extensive evaluations were performed of the child and families by experts, and several experts testified, including one for the debtor, at the trial in the state court. After the trial in state court, beginning on August 27, 1986, and continuing intermittently until December 5, 1986, findings were made by the District Court that the child had been sexually abused by the debtor, based upon a "preponderance of the evidence." However, the father was allowed limited and supervised visitation in Colorado, and the paternal grandparents were also given visitation rights. The child support remained at $350.00 per month, and the father was ordered to "pay 65% of all uninsured medical expenses, and the mother shall pay 35% of such expenses, except that all expenses for psychotherapy for the minor child shall be paid by the father." (Ex. 13).

After this order was entered, a motion for attorneys' fees for the mother and the minor child was filed in the Colorado Court by Truhlar and Truhlar, and a separate motion was also filed for costs related to the expert witnesses and trial. Two orders of judgment were ultimately entered, one granting a judgment for costs against the debtor in the amount of $2,220.86 and one granting a judgment for attorneys' fees in the amount of $12,776.00. (Ex. 1) The Colorado court had reduced the requested costs from $3,743.17 to $2,220.86 and reduced the requested fees from $17,847.00 to the judgment amount. (*See* Ex. 11) An appeal was filed from the costs and fee orders; however, the appeal ultimately was not pursued by the debtor.

This Court describes this summary of the state court proceedings to show that exten-

sive legal work was performed by both the mother's and the debtor's attorneys. The debtor testified that he had paid his attorneys $17,000.00 and had paid experts in excess of $10,000.00. However, the debtor has not satisfied the fee and costs judgments against him. The mother has been making payments on the fees owed Truhlar and Truhlar, and some recovery has been obtained on the Truhlar fees and the costs from pre-bankruptcy garnishments against the debtor's salary.

For purposes of these adversary proceedings, this Court has considered all of the hearing testimony, exhibits, case file, and the transcript of the oral findings of the Honorable J. Stephen Phillips, Judge of the Colorado District Court. The Court notes that a separate state judge heard and decided the fee and costs requests of the mother and the Truhlars because Judge Phillips had then been rotated out of domestic cases. Under Colorado statute, the attorneys may seek a judgment in their own names for fees, and that was done in this case. (*See* Ex. 20, Colo.Rev.Stat. § 14–10–119) Thus, the judgment for attorneys' fees is in the name of Truhlar and Truhlar; however, the mother remains personally liable to the Truhlar firm. The judgment for costs was in the name of the mother, who paid the costs directly. The order of District Judge Connie L. Peterson concerning the attorneys' fees is significant for purposes of these adversary proceedings, in that the order provides, in part:

"The Court, after considering the financial resources of both parties, ORDERS that the Respondent [debtor] pay directly to the Petitioner's [the minor child and the mother] counsel the sum of $12,776.00 as and for attorney's fees, with interest accruing at the present statutory rate.

"In arriving at this determination, the Court has taken judicial notice of its own file and of services rendered by counsel on behalf of the Petitioner in open court, has considered the provisions of C.R.S. § 14–10–119 and the Court expressly finds that the above-stated award of attorney's fees is reasonable and necessary in order to place the Petitioner on equal footing with the Respondent; and the Court further finds said award of attorney's fees to be fair and reasonable in light of all the circumstances of the case." (Ex. 21)

## CONCLUSIONS OF LAW

■ Judge Peterson made a specific reduction in the requested fees to disallow double-billing for both Truhlars' appearances in court and a reduction for $3,000.00 related to the defense of the grandparent visitation and to the unsuccessful motion to increase child support. (Ex. 21) Therefore, this Court concludes that Judge Peterson took all factors into account and awarded a legal fee for those portions of the state litigation related to the continuing custody, visitation, reduction of child support and abuse issues.

There are no pending appeals in the Colorado courts, and the judgments for costs and fees are final. This Court was not asked to re-hear the necessity of the costs and fees nor was this Court asked to reduce the judgments and it would not have been appropriate for this Court to conduct such an endeavor. However, this Court was asked to hold the judgment amounts nondischargeable. The debtor, on the other hand, asks this Court to hold the judgments dischargeable.

The applicable Colorado statute is important to this Court's inquiry, since it is the statute relied upon by Judge Peterson. That relevant statute, § 14–10–119 provides:

"The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name."

This Court concludes that the Colorado statute provides a basis for the Truhlars' standing to bring their adversary proceeding.

Even though this Court was not asked to determine the appropriateness of the amount of the fees and costs, it is necessary under 11 U.S.C. § 523(a)(5) that this Court determine the nature of the judgments. Section 523(a)(5) excepts from the general discharge of § 727 those debts for alimony, maintenance or support, but only if such debts are

> "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or *other order of a court of record,* determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

> "(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support." (Emphasis added)

This is an unusual factual situation in which to apply § 523(a)(5), in that the typical instance in which that section becomes applicable is one involving a divorce decree or property settlement agreement in which the parties or state court have specified some amount to be alimony, maintenance, support, or property division. In those instances, the bankruptcy court is often called upon to determine whether the designated alimony, maintenance or support is actually supportive in fact. *See e.g.* 1 *Norton Bankruptcy Law and Practice,* §§ 27.56–27.61 (1981 Ed.). Here, there is no issue presented about the nondischargeability of the state court ordered $350.00 monthly child support. Here also, there is no specific provision in the Colorado court order stating that the attorneys' fees and costs are designated as support, alimony or maintenance. Therefore, the first question for this Court is whether § 523(a)(5) controls this factual problem at all.

The Court is satisfied that § 523(a)(5) does apply, and the reason is because of the specific statutory language in that section—"other order of a court of record." This language, added by the 1984 Amendments, makes it clear that a divorce decree, or settlement, or separation agreement are not the only instruments from which the exception from discharge may arise. *See* The Bankruptcy Amendment and Federal Judgeship Act of 1984, Public Law No. 98–353. Any order of a court of record which has the effect of actually creating alimony, maintenance or support obligations may produce a support debt which is nondischargeable. For example, this specific portion of the statute has been interpreted to make a state court order of paternity and its resulting support obligation nondischargeable. *See* Ravin and Rosen, "The Dischargeability in Bankruptcy of Alimony, Maintenance and Support Obligations," 60 *American Bankruptcy Law Journal,* 1, 6–7 (Winter, 1986); *see also* 1 *Norton Bankruptcy Law and Practice* § 27.57 (1988 Supp.). However, the "other order of a court of record" language is not limited to paternity matters. The Colorado District Court is a court of record in that state. *See* Constitution of Colorado, Art. VI, § 9(1). The state court was concerned with multiple issues, and this Bankruptcy Court must determine if any of those issues were supportive in nature and if the Colorado District Court intended to create a support obligation in its granting of attorneys' fees and costs.

Under the Sixth Circuit standards established by *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th Cir.1983), a four part test for determination of dischargeability of § 523(a)(5) obligations is found, requiring the bankruptcy court first to inquire "whether the state court or the parties to the divorce *intended* to create an obligation to provide support." 715 F.2d at 1109. (Emphasis in original) Obviously, this debtor had no intention of creating a support obligation when he defended himself in the state court proceedings; therefore, the issue is whether the state court intended to create a support obligation. On its face, *Calhoun* does not squarely

apply since *Calhoun* was factually concerned with a divorce decree which incorporated a consensual property agreement. 715 F.2d at 1105. It has been observed by one court that the *"Calhoun* test is intended only to function as a tool to distinguish the nondischargeable support aspects from the dischargeable property settlement aspects of a hybrid obligation having characteristics of both." *Deatherage v. Wallace (In re Deatherage),* 55 B.R. 268, 271 n. 3 (Bankr.E.D.Tenn.1985). This Court agrees and believes that the issues presented could be decided without reference to *Calhoun.* Debts "clearly in the nature of support" are normally nondischargeable. *Zimmer v. Zimmer (In re Zimmer),* 27 B.R. 132, 134 (Bankr.S.D.Ohio 1983). *Calhoun's* rationale will not be read too narrowly however, since *Calhoun* more basically concerns an issue of whether there is in fact a state-law created support obligation. As seen in the Sixth Circuit's opinion, the bankruptcy court may consider, although it is not limited to, "those factors utilized by state courts to make a factual determination of intent to create support." 715 F.2d at 1109. As a corollary, if there is in fact no state-law created support obligation, the bankruptcy inquiry would end and the obligation would be dischargeable. *See e.g. Harrison v. Harrison (In re Harrison),* 82 B.R. 900 (Bankr.S.D.Ohio 1988).

The mother remains contractually liable to the Truhlars for their fees; therefore, the state court order as to this debtor is similar to the hold-harmless directive found in *Calhoun.* Having determined that the *Calhoun* test provides a rational means for examination of these proceedings, under that test each case must be examined upon its own facts, and this Court has considered the state court orders and ruling placed into evidence. It may be argued that these adversary proceedings do not fall within § 523(a)(5)(B) because the liability was not "designated" by the Colorado Court as support; however, § 523(a)(5) creates an exception from discharge for "support of [a] child, in connection with ... [an] order of a court of record." Specific designation is not required. Although the Colorado Court did not specify that it was creating a support obligation with the attorneys' fees and costs, such an intent is clear to this Court.

First, the subject matter before the state court was one concerning the welfare of the minor child. Child abuse had been charged and the state judge specifically found that "[t]he child was sexually abused by her father [the debtor]. Petitioner has shown that such abuse occurred by a preponderance of the evidence." (Ex. 13) In his oral findings, Judge Phillips observed that the basic issue was one of whether the father would continue to have visitation and if so to what extent, but in that observation, the underlying principle was found to be that "the well-being of the child guides every aspect of the custody determination, including visitation." (Ex. 22, p. 4) Judge Phillips went on to note that he was concerned with the welfare of the minor child because the law of Colorado required it. (Ex. 22, p. 4)

Second, Judge Phillips made specific findings that the child support would be modified to specify the division of medical expenses. In that portion of the oral ruling, Judge Phillips found: "[The debtor's] salary has remained fairly consistent; [the mother] has remarried and is not working because she has a young daughter. Understandably so, her presence in the home is fairly needed." (Ex. 22, p. 11) It is obvious from this and other findings that the state court was aware of the parties' relative financial positions.

Third, Judge Peterson, considering the entire state "file" awarded "reasonable and necessary" fees, "in order to place the [former spouses] on equal footing." (Ex. 21) This finding is consistent with the relevant Colorado statute which requires the state court, in awarding fees and costs, to consider "the financial resources of both parties." Colo.Rev.Stat. § 14–10–119. (Ex. 20.)

As a result, this Court concludes that the Colorado District Court intended to create a support obligation in its award of fees and costs. A rationale for the state statute to require that the courts consider and

balance the financial resources of the two former spouses would be to permit the party least able to pay fees and costs to have the support from the more financially able party. Judge Peterson clearly attempted to balance the financial positions of these parental parties. Further, the support resulting from the fees and costs flows to and for the minor child. It is attorneys' fees and costs for this child's welfare which is at issue, and this Court is convinced that Judge Peterson found the father better able to provide the support for the child's attorneys' fees. The Court is mindful that any debt of the mother which was paid by the debtor could have the resultant effect of providing indirect support to the child. *Calhoun,* 715 F.2d at 1108. However, it is not difficult to see that the minor child needed representation by an attorney, that her custodial parent obtained counsel for her, and that the legal services provided a direct benefit to and for the minor child. These attorneys' fees and the costs resulting from the state court litigation were thus support in nature and the state court order had the *"effect* of providing *necessary"* support and maintenance. The second step of the *Calhoun* test is therefore satisfied. 715 F.2d at 1109.

While this Court does not believe that all of the *Calhoun* test is necessarily required in this instance, the Court has also concluded that the Colorado District Court satisfied the third and fourth *Calhoun* steps by finding that the award against the debtor was necessary in order to balance the parents' relative financial positions. Obviously, the Colorado Judge did not find the amount of the subject judgment to be "so excessive that it is manifestly unreasonable under traditional concepts of support." *Calhoun,* 715 F.2d at 1110. Neither does this Court find the amount of the fees and costs to be excessive. The debtor did not place into issue the amount of the fees and costs; rather, the debtor asserted that the entire award was dischargeable. The Court recognizes that the burden of proof as to nondischargeability is on the objecting creditor. *Calhoun,* 715 F.2d at 1111; Bankruptcy Rule 4005. But this consol-

idated bankruptcy trial included reliance by both parties on the state court record and orders, and preclusive effect may be given in § 523(a)(5) proceedings to prior judicial findings of fact arising from actual litigation between the same parties. *See generally,* Russell, *Bankruptcy Evidence Manual,* §§ 1–5 (1987). This Court concludes that Judge Peterson fixed reasonable fees and costs under the Colorado statute, the reasonableness of which amounts were not effectively questioned in these proceedings. No reduction or apportionment is necessary under *Calhoun.* 715 F.2d at 1110.

■ Having found that the Colorado Court intended to create a necessary and reasonable support obligation, this Court does not need to fully consider § 523(a)(6) which excepts from discharge those debts for "willful and malicious injury by the debtor to another entity or to the property of another entity." It would certainly appear that a father's sexual abuse of a minor child is clearly an act done intentionally "that necessarily leads to injury," thus satisfying § 523(a)(6). *Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.1987). Further, this Court agrees with Judge Spector in *Borg–Warner Acceptance Corp. v. Watkins (In re Watkins),* 90 B.R. 848 (Bankr. E.D.Mich.1988), that the standard of proof for a § 523(a)(6) exception should be preponderance of the evidence. This is the same standard utilized by Judge Phillips in finding this sexual abuse. (Ex. 22) However, Judges Phillips or Peterson did not rule that the attorneys' fees or costs were awarded as damages for a tort. That issue was not tried in the Colorado District Court nor was it sufficiently litigated in this Court. Therefore, this court will not make the unnecessary leap over procedural concerns to reach 523(a)(6).

## CONCLUSION

Under 523(a)(5), this Court finds and concludes that the plaintiffs carried their burdens of proof that the attorneys' fees and costs were intended as support and maintenance, that the same have the effect of providing necessary support and maintenance to the minor child of this debtor, and

that the judgments awarded by the Colorado District Court were not "manifestly unreasonable under traditional concepts of support." *Calhoun,* 715 F.2d at 1110. This Court has considered all of "the circumstances surrounding the creation of the liability." *McConnell v. McConnell (In re McConnell),* 88 B.R. 218, 221 (Bankr.D.N.D.1988). The ultimate issue is whether the award of fees and costs related to support or maintenance of the minor child. *See e.g. Miskovsky v. Skinner,* 88 B.R. 360, 361 (W.D.Okla.1987). A parent may not abuse a child and then easily argue that attorneys' fees and costs arising from the protection of that child lack the character of maintenance and support, and this Court does not view these judgments in the vacuum advocated by the debtor on whom neither the law nor equities look with favor.

The judgments for attorney's fees and costs awarded by the District Court of Denver, Colorado are nondischargeable under § 523(a)(5).

SO ORDERED.