**In re Charles Sidney CHISM, Debtor.**

**Charles Sidney CHISM, Plaintiff,**

**v.**

**Wanda Faye Tatum CHISM, Defendant.**

**Bankruptcy No. 93–29251–D.**
**Adv. No. 93–0936.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 22, 1994.

Phil Counce, Memphis, TN, for debtor.

Tracey Malone, Bartlett, TN, for defendant.

## MEMORANDUM OPINION AND ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY

BERNICE BOUIE DONALD,
Bankruptcy Judge.

Plaintiff, Charles Sidney Chism, the above-named debtor ("Mr. Chism") filed the instant adversary proceeding[1] seeking a judicial determination that certain obligations owing to defendant, Wanda Faye Tatum Chism ("Mrs. Chism"), as a result of a divorce decree are dischargeable. 11 U.S.C. § 523(a)(5).

After consideration of testimonial proof, trial exhibits, applicable case law, and the record as a whole, the following shall constitute the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

### *Factual Summary*

The Plaintiff and Defendant were married for 31 years. The Defendant filed for and obtained a divorce in the Chancery Court of Shelby County, Tennessee,[2] June 25, 1993. At the time of the divorce, there were no minor children. As a part of the divorce, the parties entered into certain stipulations which were incorporated into the Final Decree of Divorce along with the court's findings.

The court's findings of fact and conclusions of law in relevant part were as follows:

1. That the parties have stipulated that the Defendant, Charles Sidney Chism, is guilty of inappropriate marital conduct.

2. That the parties further stipulate that the Defendant, Charles Sidney Chism, shall be solely responsible for the IRS lien which arose from the underpayment of 1986 income taxes. The Defendant shall indemnify and hold Plaintiff harmless from the payment of said debt.

3. That the parties further stipulate that the Defendant shall be solely responsible for payment to the Memphis Area Teacher's Credit Union for the deficiency owed from the foreclosure of the parties' home which amounts to $2,697.44. The Defendant shall indemnify and hold Plaintiff harmless from the payment of said debt.

4. The Court further finds that the Defendant, Charles Sidney Chism, was the proximate cause of the dissipation of the major marital asset, the parties residence located at 110 Cooper, Collierville, Tennes-

---

1. 28 U.S.C. § 157(b)(2)(L).

2. Wanda Faye Tatum Chism, Plaintiff vs. Charles Sidney Chism, Defendant. No. D–20854–3.

see, which was foreclosed in 1992; that the house had a value of $180,000.00 at the time of the foreclosure and that the amount owed on the house at the time of the foreclosure was $155,000.00. (sic)

5. That the Plaintiff is entitled to alimony in solido in the amount of $25,000.00 for said dissipation of assets.

6. That the Defendant shall further pay to Plaintiff as alimony in solido the sum of $2,250.00 which represents one-half (½) of the sale of the 1984 van which the Defendant sold without the knowledge of Plaintiff.

7. That the Defendant shall further pay to Plaintiff as alimony in solido the sum of $4,743.55 for reimbursement of Plaintiff's tax refunds which were attached by the Internal Revenue Service for the years 1991 and 1992.

8. That the Defendant shall pay to Plaintiff's attorney, Kathleen N. Gomes, as alimony in solido, the sum of $1,000.00 for her services in representing the Plaintiff.

Additionally, the court found that there had been a "dissipation of assets" which the court attributed to Mr. Chism. The court found that the value of the marital residence was $180,000. There was a mortgage balance of $155,000, and the court awarded the $25,000 equity in the home to Mrs. Chism.[3] The home was ultimately sold at foreclosure leaving a deficiency balance. Plaintiff contends that there was no basis to support the court's findings. For purposes of a complete record, this Court will recite the state court's findings. The court stated:

So now the question is what does the Court do? Well, I don't have an exact measure because I don't know exactly how to figure that fair market value, but for the sake of preserving a record so that there can be some intellectual continuity to it, you've chosen to say in your testimony that you thought it was worth $180,000, Mr. Chism. The Court doesn't find you particularly credible, but I'll go ahead and accept that figure because I think that that leads the Court to a fair result.

Well, if there's $155,000 owed, that's $25,000 difference. In my opinion *you've already spent yours somewhere else along the way.* That's what she ought to get for her *alimony in solido.* (Emphasis added)

Now, the Court categorizes it as alimony in solido because there is not only substantial dissipation of the marital assets, but it recognizes that indeed it is an appropriate award for some rather obvious reasons, *it can't be bankrupted.* (Emphasis added)

This $4,000 from the I.R.S., I believe that ought to be alimony in solido in addition.

This van—in this Court's opinion that van was every bit as much hers as it was yours, and the Court does find that you have grossly overvalued her assets. For one thing you were dead wrong when you said she had $20,000 in her retirement. I find it's only $17,000. And some of those other values she contradicts and I find her valuation of them far more credible. And when you then take all of that and look at it, well, it's just not that much.

But that, in this Court's opinion, is every bit as much hers as it was yours. *The Court will divide that 50/50 based upon her testimony, not based upon what you decide to let it go for, but her testimony about the value the Court finds more credible, $4,500, so she will get paid $2,250.* That's alimony in solido. (Emphasis added)

Also $1,000 attorney fees is more than eminently reasonable and the Court will award that as alimony in solido.

No, the Court doesn't find she has the present ability, given her circumstances, just to have tremendous amounts of money laying around to do all these things. And while the Court does require you to hold her harmless as alimony in solido on the I.R.S., the insufficiency on the home, the things that you stipulated to earlier about the $33,000 I.R.S., the Court also recognizes that that's no guarantee against some third party coming against her like on a deficiency for the house.

3. Ex. B., Findings of Facts and Conclusion of Law, p. 10.

The Final Decree of Divorce commencing as ¶ 2 assigned certain obligations to Mr. Chism, to wit:

2. That the Defendant be and is hereby ordered to pay to the Plaintiff the following sums as alimony in solido:

a. $25,000.00 cash for dissipation of marital assets;

b. $4,743.55 for reimbursement of IRS refund owed to Plaintiff for the tax year 1991 and 1992;

c. $2,250.00 for reimbursement of the sale of the 1984 van;

d. The IRS lien arising from the 1986 underpayment of taxes, penalties and interest which is, at the present time, approximately $33,000.00;

e. The $2,697.44 debt owed to the Memphis Area Teacher's Credit Union for the deficiency amount owed arising from the foreclosure of the parties marital residence. (sic)

f. $1,000.00 in attorney fees to Kathleen N. Gomes for her representation of Plaintiff in this cause.

3. That the Defendant be and is hereby ordered to indemnify and hold Plaintiff harmless from the payment of the IRS lien and debt owed to the Memphis Area Teacher's Credit Union.

4. That the personal property in the possession of the Plaintiff and Defendant at the time of the hearing shall remain as each parties' respective personal property; that the personal property in the possession of Defendant on the date of the final divorce hearing shall hereafter and forever more be his sole and separate property; and, likewise, the property in the possession of Plaintiff on the date of the final divorce hearing shall hereafter and forevermore be her sole and separate property.

On September 3, 1993, Mr. Chism filed an original petition under chapter 7 of the Bankruptcy Code seeking a fresh start. Debtor listed the debts arising from the Final Decree of Divorce.

---

4. While Mr. Chism testified that he had income of $12,000–$14,000 during 1993, and expected to earn a similar amount in 1994, a correction notice form the IRS (Trial Ex. 1) reflected 1993

Plaintiff, Mr. Chism, is currently self-employed as a data entry consultant with an income of approximately $12,000–$14,000.[4] Plaintiff was formerly employed as an insurance salesman, and had an income ranging from $40,000 to $60,000. At the time of the divorce, Mrs. Chism, was, and is currently, employed as an elementary school teacher for the Shelby County Schools where she earned approximately $20,000. Mr. Chism had just recently completed a jail term, and was nominally employed. His insurance license had been revoked, and there was no evidence in the record that he had any great earning potential. Although *Fitzgerald* abandoned the "present needs" test, it is noted that Mr. Chism does not have a home; he lives with a friend, who is also his employer. He does not own the computer that he uses to perform the data entry work.

Mrs. Chism, likewise, does not own a home. She lives with her adult daughter. At the time of the divorce, Mrs. Chism's income and earning potential exceeded that of Mr. Chism. The Court found that Mrs. Chism had approximately $17,000 in the retirement account. There was no indication of a retirement account for Mr. Chism. Mrs. Chism was college educated; Mr. Chism had only a high school education.

## DISCUSSION

11 U.S.C. § 523(a)(5) governs exceptions to discharge of debts for alimony and support of a spouse, former spouse, or child and provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a govern-

---

"Adjusted Gross Income (time of the divorce) $4,913.00". Ex. 1 also reflected a balance owing on the 1986 tax lien of $14,395.75.

mental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

■■■ The burden of proof is on the nondebtor spouse to establish nondischargeability[5] by a preponderance of the evidence.[6] Thus, the threshold inquiry for this Court is whether the obligations created under the Final Decree of Divorce are alimony, and therefore, in the nature of support. What constitutes alimony, maintenance or support for dischargeability purposes is a matter of federal bankruptcy law, not state law. *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983). The underlying obligation to provide support is governed by state law. *Id.* at 1107. "Divorce, alimony, support, and maintenance are issues within the exclusive domain of state courts." *Id.* Thus, in ascertaining the intent of the court or the parties to create an obligation of support, the bankruptcy court may look to traditional factors or indices of support, such as:

> The nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or other court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understand-

ings as to the intended purpose of the assumption.

*Id.* at 1108, footnote 7.

The Sixth Circuit in *Calhoun, supra* established a four-part test to guide courts in evaluating such awards:

1) Whether the intent of the state court or the parties was to create a support obligation;

2) Whether the support provision has the actual effect of providing necessary support;

3) Whether the amount of support is so excessive as to be unreasonable under traditional concepts of support; and

4. If the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law. *Id.* *Calhoun* involved a debt assumption provision, but has been held to be generally applicable to cases under Section 523(a)(5). *See, In re Singer,* 787 F.2d 1033 (6th Cir.1986).

The Sixth Circuit recently revisited the issue of nondischargeability under § 523(a)(5) and limited the inquiry. *See, In re Fitzgerald,* 9 F.3d 517 (6th Cir.1993). In *Fitzgerald,* the court, clarifying its holding in *Calhoun,* held that the "present needs" test of *Calhoun,* had no applicability to obligations specifically designated as alimony and intended by the parties or the state court as such. Specifically, the court opined:

> The applicability of *Calhoun,* especially the second step's "present needs" inquiry, to support obligations other than assumptions of debt has been the source of some confusion in the lower courts of this Circuit. Some courts have held, as did the District Court below, that *Calhoun* is limited to obligations to assume debts rather than conventional direct spousal or child support obligations such as alimony. (Citations omitted)

> \* \* \* \* \* \*

As the author of *Calhoun,* the writer regrets that it has been applied more broadly than intended. Fortunately, a ma-

---

5. *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983).

6. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

jority of courts in other circuits have rejected the "present needs" test when applied to alimony or child support." *See, e.g., In re Gianakas,* 917 F.2d 759 (3d Cir.1990); *Forsdick v. Turgeon,* 812 F.2d 801 (2d Cir.1987); *Boyle v. Donovan,* 724 F.2d 681 (8th Cir.1984). *See also,* Comment, *Striking the Needs Between Bankruptcy and Divorce: Developing a Standard for the Classification of Domestic Obligations Under Section 523(a)(5) of the Bankruptcy Code,* 7 BANKR.DEV.J. 565, 591 (1990) (survey indicates that a majority of circuits focus only on the intent of the parties at the time of divorce). Courts have criticized the "present needs" test on various grounds including that it permits undue federal interference with state court domestic authority, *Forsdick,* 812 F.2d at 803–04; that it punishes the non-debtor spouse who has struggled to become self-supporting, *Gianakas,* 917 F.2d at 763; and because the test would result in the discharge of an overwhelmingly high number of support obligations because by the time a debtor files for bankruptcy, most former spouses will have become self-reliant, *see In re Chedrick,* 98 B.R. 731, 734 (W.D.Pa.1989). *Calhoun was not intended to intrude into the states' traditional authority over domestic relations and the risk of injustice to the non-debtor spouse of children.* (Emphasis added) (sic) *Id.* at 520–521.

Thus, the *Fitzgerald* court eliminated the analytical framework in *Calhoun* which flowed from the "present needs" test. *Fitzgerald* emphatically admonished bankruptcy courts to refrain from becoming divorce courts, noting that "divorce, alimony, support and maintenance are issues within the exclusive domain of the state courts." *Id.* at 521.

■ Thus, applying the analytical framework of *Calhoun* under the limitations of Fitzgerald to the case at bar, the question to be addressed is whether the intent of the state court was to create a support obligation.

■ The Court may consider relevant evidence utilized by state courts to make a factual determination of intent to create an obligation of support. If no intent exists, the inquiry ends. The intent to create a support obligation must be closely scrutinized. *In re Bethshears,* Case No. 89–11099–K (Bankr. W.D.Tenn. October 5, 1990) (unpublished) While state court labels may not govern the characterization of the obligation,[7] the court may consider, among other things, "the structure and language of ... the court's decree,[8]" and such labels are "persuasive evidence of intent." *Tilley v. Jessee,* 789 F.2d 1074, 1077 (4th Cir.1986).

■ The debtor contends that there was no intent to create a support obligation. Moreover, the debtor avers that the state court attempted to punish the debtor for his "bad acts during the marriage." Debtor argues that the state court decreed, in effect, a division of property. To bolster this position, debtor points to the language in the court's Findings and Conclusions:[9]

Now, the Court categorizes it as *alimony in solido* because there is not only substantial dissipation of the marital assets, but it recognizes that indeed it is an appropriate award for some rather obvious reasons, *it can't be bankrupted.* (Emphasis added)

Defendant argues that the clear and unambiguous language of the decree, coupled with the court's consideration and application of *Calhoun* factors, conclusively evidences state court's intent, that is, to create an obligation of support. This Court cannot so find. The court's language evidences an intent to equitably divide the marital assets. This Court finds that the state court intended to create an obligation of support in the Final Decree with respect to certain items, and as to others, the labels mask a division of property.

■ The purpose of alimony is to provide a means of support for the recipient spouse. *Clothier v. Clothier,* 33 Tenn.App. 532, 232 S.W.2d 363 (1950). Alimony is not

---

7. *In re Singer,* 787 F.2d 1033 (6th Cir.1986).

8. *In re Calhoun, supra* note 7.

9. *See,* pp. 169–70.

allowed as a penal measure. *Lancaster v. Lancaster,* 671 S.W.2d 501 (Tenn.Ct.App. 1984).

Examination of the court's findings and conclusions does not evidence that the court made any finding of a "need for support." There is no showing that the court applied the "traditional factors" that courts look to in determining a need for support, such as, a demonstrated need for support, relative educational levels and work skills of the parties, disparity of incomes, and prospective employment opportunities. Instead the court focused on the adulterous acts of Mr. Chism during the marriage, his criminal conduct, and his actions resulting in dissipation of marital assets.

It is abundantly clear that the state court sought to insulate the award from discharge in bankruptcy. In order to achieve that result, the court consciously affixed the label "alimony in solido"; however, this Court must pierce the label, and ascertain whether there was an intent to create an obligation of support. The Court will analyze each component of the award.

■ ***$25,000 Cash for Dissipation of Assets.*** The Court finds that this was not intended to create an obligation of support notwithstanding its characterization as "alimony in solido." The court found the fair market value of the marital home to be $180,000 with a $155,000 mortgage balance, leaving an equity cushion of $25,000. In making the award to Mrs. Chism, the court stated, referring to Mr. Chism, "In my opinion, you've already spent yours somewhere else along the way. That's [$25,000] what she ought to get for her alimony in solido." The court goes on to comment of the appropriateness of the award because of "dissipation of marital assets" and protection against bankruptcy.[10] There is no reference to need or to any traditional factors for which alimony is awarded. Thus this Court, after looking behind the label of "alimony in solido," finds that the $25,000 award is more in the nature of a division of property and therefore dis-

chargeable under the provisions of 11 U.S.C. § 727.

■ Similarly, the court finds that the $2,250 reimbursement for the sale of the marital van valued by the court at $4,500[11] is a division of property and is therefore dischargeable. With respect to the remaining obligations under the decree:

—$4,743.55 reimbursement of IRS refund;
—$33,000 IRS lien resulting from 1986 overpayment for which Mr. Chism was ordered to hold defendant harmless;
—$2,697.44 debt to Memphis Area Teachers Credit Union; and
—$1,000 attorney fees to Mrs. Chism's attorney.

■ The Court finds each of the above items to be in the nature of support, and finds that they were intended by the state court to be in the nature of support. The state court specifically found that Mrs. Chism did not have the "present ability," given her circumstances, to pay attorney fees. While the above enumerated obligations primarily are to third parties, they are obligations which Mrs. Chism would otherwise have to pay. It is well-settled that obligations may be to a third party for the benefit of the spouse or child entitled to support, rather than strictly to the spouse. *See, In re Jones,* 28 B.R. 147 (Bankr. W.D.Tenn.1983); *In re Laney,* 53 B.R. 231 (Bankr.N.D.Tex.1985); *In re Doe,* 93 B.R. 608 (Bankr.W.D.Tenn.1988); *In re Pinkstaff,* 163 B.R. 504 (Bankr.W.D.Ohio 1994).

*In Pinkstaff, supra* the court held that the debtor's obligations under the divorce decree to pay former wife's attorney fees incurred in the divorce proceeding, and reimbursement for water bills which were to have been paid by the debtor, are nondischargeable. *Id.* at 507–508. The *Pinkstaff* court held:

[t]he Court concludes that the Decree demonstrates the Divorce Court's intent to impose a support obligation on the Debtor for the Water Bill based on the Divorce Court's specific finding of financial necessity, the relative financial condition of the

---

**10.** *See,* Findings and Conclusions, pp. 169–70.

**11.** *See,* Findings and Conclusions, pp. 170 and 171.

parties, and the fact that Kathleen was charged with providing for a minor child.

Moreover, the fact that the Water Bill represented an obligation for the necessities of life imposed by the Divorce Court prior to the Decree compels the conclusion that the Debtor's obligation to pay the Water Bill represents support. (Citation omitted)

*Id.* at 508.

■ In *Matter of Chambers,* 36 B.R. 42 (Bankr.W.D.Wis.1984), the court held that payment of the mortgage balance and foreclosure legal expenses were nondischargeable because the income from the property had been for support. In the instant case, where the property had been the dwelling for the family, it was clearly a necessary and central item to the support of the family. It therefore reasons that the arrearage should be characterized as support.

■ At the time of the divorce, Mrs. Chism had a greater income than Mr. Chism. She was gainfully employed as a teacher for Shelby County Schools. He had just completed serving a prison sentence and lost his insurance license, although he was nominally employed. Neither party had any substantial property and the marital estate had been largely depleted. The state court found that the bad acts of Mr. Chism had resulted in a dissipation of the marital assets, and found that Mr. Chism had already "spent" his share of the equity in the marital home. The Court found that Mrs. Chism's financial situation was not sufficient to pay her obligations to her attorney, and further that they were alimony in solido, and therefore in the nature of support. This Court likewise finds that the characterization of the attorney fees, the tax debt, and the deficiency judgment are amply supported by the record as being in "the nature of support."

Thus, based on all the foregoing, the Court grants in part and denies in part, plaintiff's complaint. Based on the totality of the record and pursuant to 11 U.S.C. § 523(a)(5), the Court finds and concludes that:

1) The $25,000 cash payment for dissipation of marital assets represents a division of property and is dischargeable.

2) The $4,743.55 reimbursements is in the nature of support and therefore nondischargeable.

3) The $2,250 reimbursement for the sale of property is a division of property and is therefore dischargeable.

4) The $33,000 tax lien owing to the IRS is in the nature of support and is therefore nondischargeable as to Mrs. Chism.[12]

5) The $2,697.44 debt owed to Memphis Area Teachers Credit Union is in the nature of support and is nondischargeable as to Mrs. Chism.

6) The $1,000 attorney fee award incurred in the divorce proceeding are in the nature of support and is therefore nondischargeable.

**IT IS SO ORDERED.**

---

12. The issue is moot as debtor has obtained a judgment determining those taxes to be dischargeable under 11 U.S.C. § 523(a)(1). *Charles*

*Sidney Chism v. United States of America,* Adversary Proceeding No. 93–0867, Order signed October 26, 1993, and docketed October 28, 1993.