In re Thomas A. VICKERS, Jr., Debtor.

Thomas A. VICKERS, Jr., Plaintiff,

v.

Jane Lynn Loring VICKERS, Defendant.

Bankruptcy No. 382–01120.
Adv. No. 382–0337.

United States Bankruptcy Court,
M.D. Tennessee,
Nashville Division.

Oct. 22, 1982.

---

1. Refers to § 522(g) of the Code.

Mark M. Sadlon, Horton & Sadlon, McMinnville, Tenn., for plaintiff.

B. Timothy Pirtle, McMinnville, Tenn., for defendant.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The debtor seeks a determination of the dischargeability of monthly payments to the debtor's ex-spouse required by a 1976 divorce decree as modified March 4, 1982. This court concludes that the payments required by the decree as modified as nondischargeable. In reaching this decision, the court declines to consider the changed financial circumstances of the ex-spouse or debtor under 11 U.S.C.A. § 523(a)(5) (West 1979).

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The Vickers were divorced July 21, 1976 by order of the Circuit Court for Warren County, Tennessee. The state court record reveals that the divorce court heard testimony to determine fault and to assess the relative financial positions of the parties. At the time of the divorce, Mrs. Vickers was a housewife with a very limited part-time income as an Avon representative. She had been, and continues to be, periodically hospitalized for cancer-related operations and is apparently incapable of working full time. At the time of the divorce, Mr. Vickers was a truck driver with moderate income unspecified in the record. Although Mrs. Vickers' financial position is relatively unchanged, Mr. Vickers is now less profitably employed as an apartment maintenance person.

Mrs. Vickers was awarded the divorce on the ground of cruel and inhuman treatment and the court provided in its decree:

> ORDERED, that the defendant, Thomas A. Vickers, shall pay to the plaintiff, Jane Lynn Loring Vickers, the sum of $250 per month as alimony. The first payment shall be due and payable on the first day of July, 1976 and a like payment shall be due and payable on the first day of each month thereafter until modified.

*Vickers v. Vickers,* Cause No. 1792, slip op. at 3 (Cir. Ct. of Warren Co., Tenn. July 21, 1976). The court required Mr. Vickers to

pay a $500 attorney's fee and to maintain the monthly premiums on a medical insurance policy. The court divided the marital estate such that Mrs. Vickers received title to all the parties' real property and a 1973 Volkswagon. Mr. Vickers received title to a 1974 Oldsmobile, the parties' $12,000 savings account, a 1972 tractor trailer, all the parties' horses and a 1959 Ford pick-up truck. The decree was subsequently affirmed in its entirety by the Court of Appeals for the Middle Section of Tennessee by order dated August 27, 1977. *Vickers v. Vickers,* Warren Law No. 1792 (M.S. Ct. of App. Tenn. slip op. Aug. 26, 1977).

Mr. Vickers has demonstrated repeated unwillingness or inability to make the payments required by the original decree. No less than five contempt petitions were filed against him in state court to enforce these obligations.[1] Mr. Vickers finally petitioned the state court in September of 1981 for complete relief from payments imposed by the original decree. At a hearing on February 5, 1982, his request was denied and pursuant to an order dated March 4, 1982, the state court judge who originally granted the divorce held that Vickers could be excused from payment only for the month of October and would be required to pay $910 in arrearage, $185 for the months of November, December, January, and February, and $170 for March, April, May, and June. A subsequent hearing scheduled for June 4, 1982 to determine compliance and future obligations has apparently not been held. Mr. Vickers filed a petition in bankruptcy on April 9, 1982 and thereafter this complaint to determine dischargeability of the monthly payments imposed by the state court orders.

Section 523(a)(5) of the Bankruptcy Code excepts from allowable discharge "any debt to a . . . former spouse . . . for alimony to, maintenance for, or support of . . . spouse or child, in connection with the separation agreement, divorce decree, or property settlement agreement . . . ." 11 U.S.

C.A. § 523(a)(5) (West 1979). The bankruptcy court may be influenced but is not bound by the state court's characterization of the award. The legislative history regarding Section 523(a)(5) indicates that Congress intended a bankruptcy court to scrutinize closely the divorce decree and develop appropriate federal standards. H.R.Rep. No. 595, 95th Cong. 1st Sess. 364 (1977), reprinted in U.S.Code Cong. & Ad. News 1978 at 5787, 6319. *See Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re Netherton,* 2 B.R. 50 (Bkrtcy.M.D.Tenn.1979). A bankruptcy court has a duty to examine the divorce decree and make an independent determination whether the liabilities labeled in the divorce decree as alimony, support, or maintenance are indeed such and are therefore nondischargeable, or whether the payments are in the nature of a property settlement. *Benz v. Nelson,* 16 B.R. 658, 660 (Bkrtcy.M.D.Tenn.1981); *Monday v. Allen,* 4 B.R. 617, 619 (Bkrtcy.E.D.Tenn.1980); 3 King, Collier on Bankruptcy ¶ 523.15(1) (15th ed. 1980).

The courts have considered a variety of factors in formulating their characterization of the obligation. Judge Jennings summarized the factors relevant to a Section 523(a)(5) inquiry in *Benz v. Nelson, supra,* 16 B.R. at 660–661:

1. Whether the obligations of payment terminate upon the death of either spouse or upon the marriage of the spouse benefited by the payments;

2. Whether the obligation terminates when the dependant children reach majority or are otherwise emancipated;

3. Whether the payments are made directly to the spouse;

4. The relative earnings of the parties;

5. Evidence that the spouse relinquished rights and support in return for the payment of the obligations;

6. The length of the parties marriage and the number of dependent children;

---

1. Contempt petitions were filed on September 30, 1976 [settled by agreed order], July 6, 1977 [held in contempt by order of September 16, 1977], May 18, 1978 [disposition unknown], April 12, 1979 [disposition unknown], and March 11, 1982 [pending].

7. The document itself and any inferences which could be drawn and the placement of specific provisions in the document;

8. Whether the debt was incurred for the immediate living expenses of the spouse;

9. Whether the payments were intended for the economic safety of the dependent;

10. Whether the obligation is enforceable by contempt;

11. Whether payments are payable in installments over a substantial period of time.

*See also Matter of Albin,* 591 F.2d 94 (9th Cir.1979).

■ After consideration of all the evidence the unmistakeable conclusion is that the required payments are in the nature of alimony, support, and maintenance and are nondischargeable. The court specifically finds that at least seven factors enumerated in *Benz* are present: (1) payments are periodic; (2) payments are made directly to the wife; (3) the trial court characterized the payments as alimony; (4) the payments are for a non-specific duration and have no provision for termination; (5) the trial court's order deals specifically with the division of the parties' property in other sections; (6) the obligations are enforceable by contempt; and (7) the relative health and economic position of the parties was considered by the trial court in calculating the award. The debt attributable to the original decree is thus determined to be nondischargeable.

■ Subsequent state court alterations in divorce decrees or adjustments in pay-ment schedules may reveal a change in the nature of the obligation intended to be imposed. A bankruptcy court must analyze each subsequent modification to determine whether the obligation remains one in the nature of alimony, support or maintenance, measuring each modification against the factors delineated in *Benz.* Analyzing the state court order of modification of March 4, 1982 under those criteria, the court finds that the order makes no substantive change in the nature of the payments. The payments remain periodic. The payments continue to be made directly to the wife. The court continues to refer to the payments as "alimony." The payments continue for a non-specific duration and the relative financial circumstances were again considered at the state court hearing.[2] The reduced amount and one month suspension granted by the state court was to relieve Mr. Vickers during a period of temporary unemployment. The state court judge specifically noted: "I think he [Vickers] should be appropriately excused through October, because the—and I am just doing that for no particular reason except to try to not make it quite so difficult on Mr. Vickers." Transcript of proceedings for February 5, 1982 at 48. The monthly payments and arrearage payments required by the order of March 4, 1982 are nondischargeable.

The debtor contends that despite the characterization of these debts as alimony and support, this court should discharge the obligations to ensure his "fresh start." The debtor requests this court to look at the changed financial circumstances which have occurred. He argues that shortly after the divorce decree he became financially desti-

---

**2.** The finding that the payments required by the 1982 modification are in the nature of support is supported by Circuit Judge Haston's remarks at the February 5, 1982 hearing. Judge Haston explained that "[I]t has been my thought all along that this man married her and that he should continue to support this woman and do whatever it takes to make her life a bit more comfortable in every way that I possibly can that is within the law to do it." *Id.* at 46. He continues that "[I]t is pretty much the same old story of a woman needing money, not that she is incapable of getting out and not because she is not mentally capable, but because she has . . . cancer which seems to turn up at every corner—every time she has a checkup." *Id.* Although sympathetic to the debtor's financial problems, Judge Haston concluded that "I've tried to give him [Vickers] credit for that by reducing the amount of alimony that he otherwise would have had to have paid and to—but how this woman can live on $2,000 to $3,000 a year plus whatever other expenses are paid—well I just don't see how she does it." *Id.* at 56.

tute[3] and that the defendant received substantially all of the property and thus is in a position to support herself.[4]

The issue thus posed is whether a bankruptcy court may consider circumstances existing at the time of the bankruptcy petition to determine whether payments required by a divorce decree are nondischargeable under § 523. The courts have split on whether such a prospective review of the relative financial positions of the parties is a proper avenue of inquiry in § 523(a)(5) cases. Judge Mabey has convincingly stated the view that "even if the debt was originally imposed on the basis of the need of the spouse or children, the debt cannot be held nondischargeable unless at the time of the filing there exists a present need by the spouse or children that the debt be paid." *Warner v. Warner,* 5 B.R. 434, 442 (Bkrtcy.D.Utah 1980). This approach balances the need for continued support payments, against the need to secure a fresh start for the debtor. This view was adopted and cited with approval by Judge Martin in *Miller v. Miller,* 17 B.R. 717, 720 (Bkrtcy.W.D.Wis.1982). The view has been disputed, however, by Judge Stewart when he noted that "[U]nder the governing principles, the bankruptcy court must make its determination based upon the intended function of the award at the time of entry of the state court dissolution decree." *In the Matter of Jenson,* 17 B.R. 537, 540 (Bkrtcy.W.D.Mo.1982). Circumstances existing at the time of filing bankruptcy are simply not relevant under this approach.

 The rule in this district is that a bankruptcy court does not have discretion to balance the need of the recipient spouse against the need of the debtor for a fresh start. Judge Wiseman, in reversing a bankruptcy court decision in which such analysis was employed, noted as follows:

By creating an exception to the general rule of discharge, Congress implicitly resolved the balancing of the very interests considered by the court below in favor of the spouse. Congress did not, in any manner, manifest an intention that the bankruptcy courts should embark on the balancing of these policies. Under Section 523(a)(5), the bankruptcy courts are free to determine whether a debt characterized by a state court as alimony, support, or maintenance is in fact just that. Upon finding that a debt is in fact support, alimony, or maintenance, however, the bankruptcy court is not free to discharge the debt. Section 523(a)(5) states clearly that such debts are not to be discharged.

*Benz v. Nelson,* 20 B.R. 1008, 1011–1012 (M.D.Tenn.1982), *reversing in part Benz v. Nelson,* 16 B.R. 658 (Bkrtcy.M.D.Tenn.1981). This court is thus precluded from making a prospective inquiry into the relative financial positions of the parties and is restricted to a determination of the nature of the obligation as support or property settlement from an examination of the circumstances at the time of the state court decree. The debtor must depend in cases of changed financial circumstances on those remedies available in state court for appropriate modifications of the decree.

Based upon the foregoing, it is the determination of this court that the monthly payments imposed upon the debtor by the state court judgments are nondischargeable. An appropriate order will be entered.

---

3. Although Mr. Vickers has suffered several recent periods of unemployment, it appears from checks and income tax statements filed with the court that he is now realizing a net income of approximately $800 per month. Furthermore, Mr. Vickers has remarried and it appears his wife is supplying a home as well as some income.

4. Despite these allegations by Mr. Vickers, as noted in the outline of facts above, Mr. Vickers received substantial property in the original division of the marital estate.