**In re Richard Michael PRESLER, Debtor.**

**Shirley M. DIAL, Plaintiff,**

v.

**Richard Michael PRESLER, Defendant.**

Bankruptcy No. 382–03475.
Adv. No. 382–0816.

United States Bankruptcy Court,
M.D. Tennessee.

Nov. 14, 1983.

Charles O. Marshall, Daniel, Harvill, Batson & Nolan, Clarksville, Tenn., for plaintiff.

William L. Aldred, Clarksville, Tenn., for defendant.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The debtor's former spouse seeks a judgment of nondischargeability under 11 U.S.C.A. § 523(a)(5) (West 1979) for two debts incurred pursuant to a decree of divorce. The first obligation is a series of monthly payments to the plaintiff and the second is a debt for orthodontic care provided a minor child. After consideration of the exhibits, stipulations, and applicable authority, the court concludes that the debtor's monthly payments to his ex-spouse are not in the nature of alimony, support or maintenance and are dischargeable, but the orthodontic payments are support and maintenance for the debtor's minor child and are nondischargeable.

The following constitute findings of fact and conclusions of law as required by Rule 7052 of the Bankruptcy Rules.

The plaintiff, Shirley M. Dial,[1] and the defendant/debtor, Richard Michael Presler, were married March 30, 1970. A son was born September 25, 1971. After experiencing considerable marital difficulties, the parties separated April 1, 1980. The plaintiff sued for divorce July 21, 1981 alleging irreconcilable differences, cruelty, and adultery.

A final decree of divorce was entered October 5, 1981. The state court awarded custody of the minor child to the plaintiff. Incorporated in the decree was a document titled "Marital Settlement Agreement." The agreement allowed the plaintiff $250 per month for "child support," the parties' house, and the family automobile. The agreement further provided that:

4. Husband agrees to pay to the wife, alimony in solido in the sum of $14,400 and said sums shall be payable in equal consecutive monthly installments of $150.00, beginning October 1, 1981, and continue each month thereafter until paid in full.

12. It is agreed between the parties hereto that in the event the minor child needs orthodontic treatment and services, the HUSBAND will pay the direct cost of said orthodontic treatments or services during said childs minority. The WIFE agrees to keep the HUSBAND advised as to the necessity and timing of said treatment or services, and the WIFE further agrees to provide the HUSBAND with all expense statements associated with said treatments or services.

*Presler v. Presler,* No. 47–596, slip op. at 3, 4 (Ch.Ct. of Montgomery Cty., Tenn. Oct. 5, 1981). The defendant ceased making the payments required by paragraph 4 in September of 1982 and has failed to pay for orthodontic care as required by paragraph 12.[2] The plaintiff filed a complaint for contempt on October 8, 1982.[3]

The defendant filed a Chapter 7 petition on October 26, 1982. The defendant scheduled an unsecured debt to his ex-wife of $12,750 owed pursuant to paragraph 4 of the divorce decree and $1,745 owed to Drs. William E. Beaumont and Gerald R. Karr for orthodontic services. The plaintiff filed a proof of claim for $12,750 on November 22, 1982 and a complaint objecting to the discharge of both debts on December 9, 1982. This matter was submitted to the

---

1. The former Mrs. Presler remarried August 7, 1982.

2. The defendant has made one $15 payment to the orthodontists. The defendant is apparently current in paying the $250 per month child support.

3. The contempt proceeding was stayed pursuant to 11 U.S.C.A. § 362 (West 1979) and has not been resumed.

court on stipulations and exhibits on July 5, 1983.[4]

■ A debt is nondischargeable only if it is specifically excepted under a subsection of 11 U.S.C.A. § 523 (West 1979). Exceptions to discharge are strictly construed in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). *See also Murphy & Robinson Investment Co. v. Cross,* 666 F.2d 873, 880 (5th Cir.1982); *Kansas State Bank & Trust Co. v. Vickers,* 577 F.2d 683, 687 (10th Cir.1978); *Household Finance Corp. v. Danns,* 558 F.2d 114, 116 (2d Cir.1977). A creditor objecting to the dischargeability of a debt bears the burden of proof to establish that the debt is properly within one of the statutory exception. *Bailey v. Bailey,* 20 B.R. 906, 909 (Bkrtcy.W.D.Wis.1982); *Daviau v. Daviau,* 16 B.R. 421, 424 (Bkrtcy.D.Mass.1982); *Carlile v. Fox,* 5 B.R. 317, 320 (Bkrtcy.N.D.Tex. 1980).

■ The plaintiff alleges that the monthly payments and the orthodontic debts are nondischargeable under 11 U.S. C.A. § 523(a)(5) (West 1979). Section 523(a)(5) excepts from discharge:

[A]ny debt to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C.A. § 523(a)(5) (West 1979). The objecting creditor must prove that the obligations were "actually in the nature of" support or maintenance, and not merely part of a division of property, or as the result of inexact draftsmanship. Although the divorce decree characterizes the debts as "alimony in solido" and "child support," the court is not bound by these characterizations and must ascertain the actual nature of the obligation.[5] This court has adopted eleven factors for evaluating the dischargeability of an alleged support obligation under § 523(a)(5):

1. Whether the obligations of payment terminate upon the death of either spouse or upon the marriage of the spouse benefited by the payments;

2. Whether the obligation terminates when the dependent children reach majority or are otherwise emancipated;

3. Whether the payments are made directly to the spouse;

4. The relative earnings of the parties;

5. Evidence that the spouse relinquished rights and support in return for the payment of the obligations;

6. The length of the parties' marriage and the number of dependent children;

---

4. This case was submitted to this court before the decision of the United States Court of Appeals for the Sixth Circuit in *Long v. Calhoun,* 715 F.2d 1103 (6th Cir.1983). *Calhoun* deals with the dischargeability under § 523(a)(5) of the assumption of joint debts pursuant to a separation agreement. The parties have not sought reconsideration in light of *Calhoun* and there is no indication that *Calhoun* would affect the presentation or outcome of this case. This court specifically reserves the question whether *Long v. Calhoun* has modified or reversed *Benz v. Nelson* to the extent that *Benz* held that changed circumstances could not be considered in a § 523(a)(5) case.

5. Despite the characterization of the debt as "alimony in solido", the court has the duty to examine the divorce decree and surrounding circumstances to make a determination of the actual nature of the obligation. *Long v. Calhoun,* 715 F.2d at 1107; *Vickers v. Vickers,* 24 B.R. 112 (Bkrtcy.M.D.Tenn.1982); *Benz v. Nelson,* 16 B.R. 658, 660 (Bkrtcy.M.D.Tenn.1981) *rev'd in part,* 20 B.R. 1008 (D.C.M.D.Tenn. 1982). The legislative history accompanying § 523(a)(5) reveals that Congress intended the bankruptcy courts to develop federal standards for determining the true nature of the obligation. H.R.REP. NO. 595, 95th Cong., 1st Sess. 364 (1977) *reprinted* U.S.CODE CONG. & AD. NEWS 1978 at 5787, 6319. *See also Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Long v. Calhoun,* 715 F.2d at 1107; *In re Netherton,* 2 B.R. 50 (Bkrtcy.M.D.Tenn. 1979).

7. The document itself and any inferences which could be drawn and the placement of specific provisions in the document;

8. Whether the debt was incurred for the immediate living expenses of spouse;

9. Whether the payments were intended for the economic safety of the dependent;

10. Whether the obligation is enforceable by contempt;

11. Whether payments are payable in installments over a substantial period of time.

*Vickers v. Vickers,* 24 B.R. 112, 114–115 (Bkrtcy.M.D.Tenn.1982); *Benz v. Nelson,* 16 B.R. 658, 660–661 (Bkrtcy.M.D.Tenn.1981).

There is conflicting proof on the question whether the state court or the parties to the divorce "intended" to create a support obligation in the husband's agreement to pay "alimony in solido" in monthly installments of $150. The plaintiff, Shirley Dial, in her sworn affidavit, explains the $150 payment as follows:

I initially requested that my former husband pay the same amount of child support as set out in the Marital Settlement Agreement dated 16 March 1981, or the sum of $500.00. I eventually offered to call a portion of this payment child support which was set at $250.00, and the remainder of this support payment alimony in solido, and to extend this payment of a period of ten (10) years and one (1) month, so my former husband could deduct this amount. He decided instead that he wished to tie the alimony payments to our child's reaching the age of eighteen (18) and going to college. As a result, he chose to pay the sum of $150.00 per month beginning 1 October 1981, until the child reached the age of 18, which totalled the sum of $14,400.00 as alimony in solido.

The defendant/debtor, Richard Presler, explained the $150 payment as follows:

It was my understanding that this figure was a debt that I would owe my wife and would have to pay One Hundred Fifty Dollars, ($150.00), per month until I paid the debt in full. It was my understanding that this was the method by which Shirley would recoup her investment for being what she felt was a good wife during our marriage. It is my understanding that she was claiming that she had contributed to the marriage by both holding a job and being a housewife at the same time, and that this was the way I would repay her for this. It was worded so that it was to be paid even if she died or remarried a millionaire, and regardless of her raises and how much money she was making. It was a way we settled up everything. . . .

I did not view this amount as support to Shirley because she was making almost twice my income and when the child support figure of Two Hundred Fifty Dollars, ($250.00), was added to the One Hundred Fifty Dollars, ($150.00), debt to Shirley, I had only Ninety-Three Dollars, ($93.00), per month to pay expenses of Three Hundred Sixty-Three Dollars, ($363.00). I would never have signed the agreement if I thought I was agreeing to provide for Shirley's living expenses, etc. as I could not adequately pay mine without skipping certain ones every month or so.

There are other separate provisions of the divorce decree clearly dealing with the support payments for the parties' minor child. The decree does not indicate that the $150 per month was intended to retire any particular obligation which might be characterized as a support obligation. Even if this court accepts the plaintiff's characterization that the $150 was intended as a support obligation, no evidence appears in the record that the payments had the *effect* of providing support necessary to insure the daily needs of the former spouse and child. The stipulated proof is that the debtor's ex-spouse had substantial independent income of her own, more than sufficient to provide for her daily needs and the needs of her child. The divorce decree provides for $250 per month payable as child support. The plaintiff failed to carry its burden of

proof; the $150 per month obligation of the debtor is dischargeable in bankruptcy.

■ The orthodontic debts are nondischargeable. The orthodontic payments are denominated as child support, are actually in the nature of support, and are clearly intended for the economic welfare of the child. The orthodontists have threatened to discontinue treatments if the required payments are not made. The debtor's responsibility for orthodontic and dental care is an element of support for the minor child.

Accordingly, the court finds that debtor's $150 per month payments to his ex-spouse are DISCHARGEABLE and that the orthodontic debts are NONDISCHARGEABLE.