**In re Frank Ronald GOODNIGHT, a/k/a F.R. Goodnight, Ron Goodnight, F. Ron Goodnight, Debtor.**

**Lorraine M. SCHMERZLER, Plaintiff,**

v.

**Frank Ronald GOODNIGHT, Defendant.**

**Bankruptcy No. 88–10344.
Adv. No. 88–0114.
Civ. A. No. 89–1035–K.**

United States District Court, D. Kansas.

July 6, 1989.

**800**

Ronald Innes, Wichita, Kan., for plaintiff.

Steven L. Speth, Gerald D. Lasswell, Stinson, Lasswell & Wilson, Wichita, Kan., for debtor/defendant.

Christopher J. Redmond, Wichita, Kan., trustee.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

The present case is an appeal from the bankruptcy court's decision in the adversarial proceeding filed by plaintiff Lorraine Schmerzler. Schmerzler is the ex-wife of the debtor, Frank R. Goodnight. In her complaint, Schmerzler argued that sums due to her from Goodnight under a court order entered during their divorce reflected the support obligations of Goodnight, and accordingly were not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5).

In its memorandum order filed January 17, 1989, the bankruptcy court found that the obligations were in the nature of support rather than the division of property. It therefore concluded that the obligations were not dischargeable. The debtor Goodnight appeals.

On September 2, 1988, the parties filed a set of 40 stipulated facts. The stipulated facts form the basis for the factual determinations contained in the memorandum order of the bankruptcy court. However, for some unstated reason, many of the stipulated facts were ignored by the bankruptcy court. In its findings of fact, the court excluded any mention of ¶¶ 21, 26, 28, 29, 30, 31, and 32 of the stipulated facts.

In reviewing the findings of the bankruptcy court, this court may set aside findings of fact only if they are clearly erroneous. The conclusions of law reached by the bankruptcy court, however, are subject to *de novo* review. *In re Blehm Land & Cattle Co.*, 859 F.2d 137 (10th Cir.1988); *In re Herd*, 840 F.2d 757, 759 (10th Cir. 1988).

The stipulated facts indicate that Schmerzler and Goodnight were divorced in October, 1983. The Interlocutory Judgment of Dissolution of Marriage was filed on October 5, 1983. Under the terms of

this decree, Goodnight was obliged to make monthly payments of $2,000.00 to Schmerzler for the next three years, and monthly payments of $1,000.00 during the following year. The decree characterizes the monthly payments as "support."

■ Under 11 U.S.C. § 523(a)(5), obligations involving alimony, maintenance, or support for a former spouse or minor children are not dischargeable in bankruptcy. Obligations arising from a division of property in a divorce action are dischargeable. In determining whether an obligation is a division of property or support, the labeling used in the divorce decree is not decisive. *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989). Instead, the court must look to the substance of the obligation and the intention of the parties at the time of the stipulation or settlement agreement. *In re Goin*, 808 F.2d 1391, 1392 (10th Cir. 1987). "If the parties did not intend to create a support obligation, then the debt is a property settlement and must be discharged in bankruptcy. On the other hand, if the parties intended to create a support obligation, that debt should not be discharged." *In re Yeates*, 807 F.2d 874, 878 (10th Cir.1986).

■ In *Goin*, the Tenth Circuit identified four factors which may be of assistance in determining the nature of an obligation arising from a divorce:

(1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that termi-

nates on remarriage or death is indicative of an agreement for support.

808 F.2d at 1392–1393.

Applying these factors to the present case, the bankruptcy court concluded, in essence, two and one-half of the four factors indicated Goodnight's obligations were in the nature of support. The court therefore concluded that the obligations were not dischargeable. As discussed below, the bankruptcy court erred in its analysis of the *Goin* factors. However, the court's reliance solely on the *Goin* factors, to the exclusion of all other considerations, indicates a more serious error.

In *Goin*, the Tenth Circuit did not establish the four factors cited therein as the exclusive test for determining the nature of an obligation. Rather, it simply identified four considerations which were "pertinent to the bankruptcy court's determination." 808 F.2d at 1392. The fundamental inquiry, however, remains the same: what did the parties intend in creating the obligation?

This court has previously rejected a circumscribed approach in distinguishing between support and property division for discharge purposes. In *Foss v. Foss (In re Foss)* Case No. 86–12416, Adv. No. 86–0738 (Bankr.D.Kan. Dec. 28, 1987), the bankruptcy court held that, in determining whether obligations were in the nature of support or a division of property, the court should not look beyond the face of the documents creating the obligation. The bankruptcy court reasoned that only if a patent defect appeared on the face of the documents should extrinsic evidence of intent be considered. On appeal, this court held that such an approach was erroneous. *Foss v. Foss*, 87 B.R. 167 (D.Kan.1988). The court affirmed the bankruptcy court's ultimate conclusion that the payments in issue were alimony, analyzing the obligation under the factors cited in *Goin*.[1]

---

**1.** The bankruptcy court's opinion in the present case thus miscites to its earlier decision in *Foss*. In the memorandum opinion, it states:

While the document itself specifically refers to the payments as support the Court is not bound by this. [other citations omitted] *In re*

*Foss*, Case No. 86–12416, Adv. No. 86–0738, Slip Op. (Bankr.D.Kan. Dec. 28, 1987) (Pearson, J.), *aff'd.,* 87 B.R. 167 (D.C.Kan.1988). Slip Op. at 10. This is of course a correct statement of the law. Yet, the bankruptcy court's earlier decision in *Foss* did not subscribe

Here again, the bankruptcy court has limited its investigation. It has utilized the *Goin* factors, but it has avoided other direct and relevant evidence regarding the intent of the parties.

█ In the present case, there is clear and convincing evidence that the parties intended the monthly payments by Goodnight to serve as part of a property settlement. Schmerzler conceded in her deposition and the stipulations submitted to the bankruptcy court that she agreed to release her interest in marital property "in exchange for" Goodnight's promise to make the monthly payments. (Schmerzler Dep. at 63; Stipulation ¶ 26). On the opposite side of the coin, Schmerzler recognized that Goodnight's obligation to make monthly payments was "in consideration of" the division of property. (Schmerzler Dep. at 20–21; Stipulation ¶ 30). According to Schmerzler, the property division "was an exchange for relinquishing my interest and my claims that he would pay me this amount of money, this is what the offer was during the divorce hearing.... It was value exchanged for value." (Schmerzler Dep. at 63; Stipulation ¶ 32). Finally, Schmerzler also has acknowledged that the obligations "were actually intended to 'equalize' the division of the parties' assets." (Schmerzler Dep. at 20–21; Stipulation ¶ 21).

These concessions by plaintiff Schmerzler clearly indicate that Goodnight's monthly payment obligations were intended as part of a division of marital property. As a result, the obligations are dischargeable in bankruptcy. The bankruptcy court's exclusive focus on the four factors mentioned in *Goin* reflects a fundamental misunderstanding of the nature of those factors. Those factors often may be of assistance in resolving the nature of certain payment obligations, but they are not a bar to the consideration of other evidence which is clearly relevant to the ultimate issue of the parties' intent. Here, neither the bank-

ruptcy court, nor the plaintiff in her appellate brief, offers any justification for ignoring the plaintiff's admissions in her deposition and in the stipulated facts.

█ Finally, even assuming the court should adopt the approach of the bankruptcy court and focus solely upon those factors mentioned in *Goin*, the ultimate characterization of the payments at issue must still be reversed, since it rests on a flawed analysis of those factors. As noted earlier, the bankruptcy court held that two and one-half of the four *Goin* factors were met. The court concluded that the first and third factors were met, finding with regard to the former that "there appears to be an imbalance of income," and with regard to the latter that the payments were to be made "in installments over a substantial period of time." Slip op. at 9, 10. The court further held that the fourth factor was not met, since the payments would not terminate on Schmerzler's remarriage. Slip op. at 10–11. With regard to the second factor, the court seemed to have some difficulty, concluding, *seriatim*, that the factor was not met, that it was partially met, and that it was met.

> There are no minor children to the marriage. Thus although the Court concludes that there is an imbalance of income, standard number 2 is apparently not satisfied.
>
> . . . .
>
> Two factors are met and two are apparently not met. However, because there is an imbalance of income between the parties part of standard number 2 is met.
>
> Because the parties married later in life the presence or absence of minor children of the marriage is an indeterminative factor. Therefore, while there are no minor children to the marriage, the Court notes that there is an imbalance of

---

to this position, but its opposite: that the court is bound by the language of the documents, absent a patent defect in the documents. It was on that point that this court found error. Thus the bankruptcy court's citation to *Foss* is in

error, first, in citing to its earlier decision as support for its current proposition, and second, for stating that the earlier decision was affirmed by this court. It was in fact affirmed on other grounds.

income. Thus, the Court holds that standard number 2 *is* met.

Slip op. at 10, 11 (emphasis in original).

The bankruptcy court concluded that the first factor was met, finding that there was an imbalance in the income potential of the parties. The court stated that Goodnight "appears to be quite well off." Slip op. at 9. Schmerzler, on the other hand, appeared to possess "no special job skills and has spent most of her adult life as a homemaker." Slip op. at 10. There is no evidence in the record to support these conclusions. The case was presented to the bankruptcy court on a set of stipulated facts. The stipulated facts simply do not contain any indication of the great imbalance of income found by the bankruptcy court.

■ The court also erred in its treatment of the second factor. The plaintiff and the debtor have no children from their marriage. Instead of treating the second factor as irrelevant, the bankruptcy court treated the second factor as severable, and that while the first portion of the factor was not met (there being no minor children), the second portion was met (an imbalance of income).

The bankruptcy court's approach to the second factor is inconsistent with the language of the Tenth Circuit in *Goin.* In that case, the court used the conjunctive in describing the second factor: "when there are minor children *and* an imbalance of income," the obligations are more likely to be support rather than a division of property. 808 F.2d at 1392–1393.[2] (emphasis added). More importantly, the bankruptcy court's approach violates common sense. By ignoring the first portion of the factor (minor children), and then finding the factor satisfied by an imbalance of income, the second factor is made redundant with the first. Both factors would establish only that there is an economic disparity

between the parties, and the second factor thus adds nothing to the first. The second factor was clearly intended to apply only when both minor children and an imbalance of income are present. Since that is not true in the present case, the second factor should have been excluded completely from the court's analysis.

The bankruptcy court concluded that the third factor was met, finding without analysis that the payments were to be made "over a substantial period of time." Under the interlocutory judgment of dissolution, Goodnight was obliged to make monthly payments of $2,000.00 for three years, and (at the conclusion of that period) payments of $1,000.00 for one year. Thus, the total time period in which Goodnight was obliged to make payments did not exceed four years. The bankruptcy court's opinion fails to note that most courts which have applied the third factor, and found that the obligation extended over a substantial period of time, have involved significantly longer time spans. *See Goin,* 808 F.2d at 1392 (obligation to make payments for 13 years); *Shaver,* 736 F.2d at 1315 (10 years); *In re Smith,* 436 F.Supp. 469 (N.D.Ga.1977) (9 years); *In re Anderson,* 62 B.R. 448, 450 (Bankr.D.Minn. 1986) (10 years); *In re Vickers,* 24 B.R. 112, 115 (Bankr.D.Tenn.1982) (indefinite period).[3]

Finally, the fourth factor must also be considered inconclusive in the present case, rather than, as the bankruptcy court took it, an indication of a property settlement. The bankruptcy court concluded that the fourth factor indicating support mentioned in *Goin* did not apply since the interim judgment required the payments to be made even after the remarriage of Schmerzler. The failure of the payments to terminate upon Schmerzler's remarriage

2. The conjunctive is also used in earlier decisions applying this factor. *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984); *In re Woods,* 561 F.2d 27, 30 (7th Cir.1977).

3. In *In re Altavilla,* 40 B.R. 938, 941 (Bankr.D. Mass.1984), the court referred to an obligation arising from a five year note as "a relatively long period of time." However, this conclusion

was not dispositive. The court still found that the obligation represented a division of property rather than support, stating that the extended payment period arose from the obligee's financial inability to satisfy the obligation in a lump sum rather than for the purpose of providing monthly support for the recipient spouse.

does indicate that the obligation was intended to be in the nature of a property settlement. However, the decree does provide that the obligation terminates on Schmerzler's death, which would indicate the obligation was in the nature of support. *See Shaver v. Shaver*, 736 F.2d 1314, 1317 (9th Cir.1984) (factor satisfied by a provision in the decree terminating the periodic payments upon the death of the recipient).

Thus, of the four factors mentioned in *Goin*, there is insufficient evidence in the record to rule on the first, and the second is not relevant in the present case. The third factor is indeterminative, since the payments are neither in a lump sum (which would indicate they were in the nature of a property settlement) nor made for a substantial period of time (which would indicate they were in the nature of support). The fourth factor is also inconclusive. The termination of the payment obligations upon the recipient's death would tend to indicate that the payments were intended as support. However, the continuation of the payments after the recipient's remarriage indicates they were intended as part of a property settlement. There is nothing in the consideration of these factors which would contradict the unequivocal evidence in the stipulated facts that the parties intended these payments as an equalization of assets.

IT IS ACCORDINGLY ORDERED this 6 day of July, 1989, that the order of the bankruptcy court entered on January 17, 1989 is reversed, and this matter is remanded to bankruptcy court for further proceedings.