IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

_____

|                                        |   |                              |
|----------------------------------------|---|------------------------------|
|                                        | ) |                              |
| **DOROTHY JANE AHERN (PIEROTTI)**      | ) | Shelby County Circuit Court  |
|                                        | ) | No. 134593 R.D.              |
| Plaintiff/Appellee.                    | ) |                              |
|                                        | ) |                              |
| VS.                                    | ) | C.A. No. 02A01-9708-CV-00190 |
|                                        | ) |                              |
| **ROBERT FRANCES AHERN**,              | ) |                              |
|                                        | ) |                              |
| Defendant/Appellant.                   | ) |                              |
|                                        | ) |                              |

**FILED**

September 11, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable D'Army Bailey, Judge**


**John R. Candy**, Collierville, Tennessee
**Garland Erguden**, Memphis, Tennessee
Attorneys for Defendant/Appellant.


**Robert A. Wampler**, Memphis, Tennessee
Attorney for Plaintiff/Appellee.


OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Defendant Robert Francis Ahern (the Husband) appeals the trial court's judgment finding the Husband guilty of multiple counts of criminal contempt for failing to pay the alimony and child support obligations set forth in the court's final divorce decree. We affirm in part and reverse in part the trial court's judgment.

## I. Factual and Procedural History

The parties were divorced in June 1993. The final divorce decree, which incorporated the provisions of the parties' marital dissolution agreement (MDA), awarded Plaintiff/Appellee Dorothy Jane Ahern Pierotti (the Wife) exclusive custody of the parties' two minor children. The Husband agreed to pay child support in the amount of $1,346.88 per month and to furnish the Wife copies of his canceled payroll checks and payroll ledger on a quarterly basis. The Husband also agreed to pay 88.5% of (1) the children's private school tuition, books, and registration and (2) the children's "uninsured health related care costs." Per the MDA, the final divorce decree required the Husband to pay various amounts to the Wife as alimony *in solido*, including but not limited to the following amount:

> 14.     The husband shall pay the wife the sum of $32,500 as alimony *in solido* for her support and maintenance. This same shall incur interest at 8% simple annual interest compounded annually. The payments shall be at the rate of $1000 per month, principal and interest beginning on the LAST day of MARCH, 1993, and on the same date thereafter until paid. This sum shall not be deductible for tax purposes by the husband nor includible in the wife's income for tax purposes. Interest begins on 3/9/93. This judgment shall also be against M.S.I. jointly and severally. No prepayment penalty.

M.S.I. referred to Management Systems, Incorporated. The Husband owned all of M.S.I.'s stock and served as its president.

In November 1996, the Wife filed a petition for writ of *scire facias* in which she sought to have the Husband held in contempt for his willful and intentional violations of the foregoing support provisions of the final divorce decree. The petition alleged that the Husband had filed a bankruptcy petition in which he sought to discharge the alimony debt to the Wife but that the debt was determined to be nondischargeable. The Wife later amended her petition to ask that the

Husband be held in both civil and criminal contempt, and she filed a notice that she was seeking to have the Husband held in contempt pursuant to Tennessee Code Annotated sections 16-1-103 and 29-9-101 through 29-9-104.

The Husband filed an answer in which he asserted that many of the described debts to the Wife had been discharged at the conclusion of his bankruptcy action. The Wife responded by again amending her petition, this time to ask the trial court to make a determination as to the dischargeability of the debts pursuant to an order of the Bankruptcy Court for the Western District of Tennessee; however, the bankruptcy court's order does not appear in the record.

Prior to trial, the case was transferred from Division 8 to Division 5 of the Circuit Court for the Thirtieth Judicial District. Although the Husband previously had demanded a jury trial, he announced that he would waive his right to a jury trial if Division 5 would accept the transfer of the case and conduct a trial on all of the issues pending in this litigation. Thereafter, the Division 5 trial judge proceeded to conduct a bench trial on the Wife's contempt petition. Partway through the trial, however, the trial judge, apparently *sua sponte*, announced that she was transferring the case back to Division 8. The trial judge announced that:

> This Court is of the opinion that post-divorce matters, especially in a situation such as this one, are more properly heard by the judge who heard the divorce, and this -- and Division 5 is transferring this back to Division 8, which is now in a posture to accommodate the parties.

The transfer followed arguments by counsel for the parties concerning the need to interpret the provisions of the MDA in order to determine the dischargeability of the debts to the Wife.

Neither party objected to the transfer back to Division 8. When the proceedings resumed in Division 8, however, the Husband contended that jeopardy had attached in the trial before Division 5 and that double jeopardy principles prevented his retrial in Division 8. The trial court rejected this argument, ruling that the Husband had waived his double jeopardy argument by failing to raise an objection in Division 5. The Husband then renewed his demand for a jury trial, but the trial court ruled that this right also had been waived.

At trial, the Wife testified that the Husband had failed to make alimony payments as required by paragraph 14 of the MDA. At the time of the Wife's petition, the Husband owed the Wife $28,271.46 in alimony. The Wife also testified that the Husband owed $13,828.12 for the children's private school tuition because he had not paid his share of the tuition for four consecutive school years. Finally, the Husband failed to pay $3,758.41 for the parties' son's braces.

The Husband admitted that he had not paid the amounts alleged to be owed to the Wife. The Husband claimed, however, that he was unable to pay the amounts, despite the fact that his adjusted gross income for each of the two previous years exceeded $80,000. Since the divorce, the Husband had remarried a woman with three children, and he and his new wife had a child together. The Husband claimed that most of his income went toward paying child support to the Wife and toward supporting his new family, including an $1100 mortgage payment and clothing and groceries for his new wife and four children. Although the Husband claimed that he was unable to pay the amounts allegedly owed, he acknowledged that in 1996 he purchased a new home valued at approximately $165,000 and that in 1994 or 1995 he paid about $5,000 to settle a battery claim against him. The Husband denied that any amount due for the son's braces constituted a "health-related care cost," and he stated that the Wife never had requested reimbursement for this amount.

As for his alimony obligation to the Wife, the Husband attempted to testify that he failed to pay these amounts because he believed the debt was discharged in his bankruptcy proceeding. The trial court repeatedly sustained the Wife's objections to this testimony, however, ruling that such testimony was irrelevant. As an offer of proof, the Husband submitted documents from the bankruptcy court which showed (1) that the Husband filed his bankruptcy petition in October 1993, (2) that the Wife filed a proof of claim in the amount of $72,481.95, (3) that the Wife's claim was treated as a general, unsecured claim, (4) that the Wife received a net distribution of $13,643, and (5) that the Husband received a discharge as to all dischargeable debts. The Wife's proof of claim was somewhat confusing in that it seemed to characterize the debt both as a "property division" and as spousal "support and maintenance."

At the trial's conclusion, the trial court found beyond a reasonable doubt that the Husband was guilty of criminal contempt, pursuant to Tennessee Code Annotated section

29-9-102(3), for failing to pay the alimony and child support obligations set forth in the final divorce decree. The trial court made the following findings and imposed the following sentences:

> 2.     That [the Husband] is in arrears through December 31, 1997, in the payment of the Court ordered alimony to [the Wife] in the amount of $28,271.46 which was payable at the rate of $1,000.00 per month. The Court deems that each monthly default by [the Husband] is a separate act of criminal contempt and [the Husband] is sentenced to incarceration for five (5) days for each of the twenty-eight (28) counts of criminal contempt for a total of one hundred and [forty] (140) days incarceration.
>
> 3.     The Court further finds that [the Husband] is in arrears in the payment of the Court ordered child support to [the Wife] which includes unpaid school tuition in the amount of $13,828.12 through May 1997 and unpaid uninsured health related care costs for the children in the amount of $3,758.48 through November 1996 and the Court finds [the Husband] in criminal contempt for this default and sentences [the Husband] to one hundred and eighty days incarceration for this default, however this sentence will run concurrently with the sentence of one hundred forty days incarceration as set forth in paragraph two (2) of this order.

The trial court also awarded the Wife money judgments for the amounts due.

On appeal from the trial court's judgment of contempt, the Husband contends that the trial court erred in rejecting the Husband's defense of double jeopardy, in finding that the Husband waived his right to a jury trial, and in excluding proof of the Husband's prior bankruptcy proceeding.

## II.  Denial of Husband's Double Jeopardy Claim

We first find it necessary to address the Husband's double jeopardy argument because, if his argument on this issue is successful, it will effectively pretermit the Husband's remaining issues on appeal. The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Tennessee Constitution similarly provides that "no person shall, for the same offence, be twice put in jeopardy of life or limb." Tenn. Const. art. I, § 10. The double jeopardy clauses of the United States and Tennessee constitutions protect against "(1) a second prosecution for the same offense after conviction, (2) a second prosecution for the same offense after

an acquittal and, (3) multiple punishments for the same offense." *State v. Mounce*, 859 S.W.2d 319, 321 (Tenn. 1993). In short, a double jeopardy violation arises "when an individual is twice placed in jeopardy for the same offense." *State v. Pennington*, 952 S.W.2d 420, 422 (Tenn. 1997)

Our supreme court has recognized that this constitutional protection against double jeopardy attaches to nonsummary criminal contempt proceedings just as it attaches to other criminal prosecutions. *State v. Winningham*, 958 S.W.2d 740, 743 n.4 (Tenn. 1997). Moreover, the court has indicated that, in nonjury proceedings, "jeopardy attaches when the first witness testifies." *State v. Pennington*, 952 S.W.2d at 422. Accordingly, a cursory review of the record in this case would suggest that the protection against double jeopardy attached because the case involved nonsummary criminal contempt proceedings and because the first witness, the Wife, already had testified when the trial judge in Division 5 transferred the case back to Division 8.

Nevertheless, we reject the Husband's claim of a double jeopardy violation because we conclude that he waived this defense by failing to object to the Division 5 judge's transfer of the case back to Division 8. Courts have recognized an exception to the prohibition against double jeopardy when the defendant consents to the termination of the first proceeding in which jeopardy attaches. *State v. Mounce*, 859 S.W.2d 319, 321 (Tenn. 1993) (citing *United States v. Scott*, 437 U.S. 82 (1978); *State v. Knight*, 616 S.W.2d 593 (Tenn.), *cert. denied*, 454 U.S. 1097 (1981); *Seibert v. State*, 542 S.W.2d 381 (Tenn. Crim. App. 1976)). Once jeopardy attaches, the accused has the right, absent a manifest necessity for a mistrial,[1] to insist that the case proceed to a conclusion on the merits. *State v. Knight*, 616 S.W.2d at 597. By failing to object to an unnecessary mistrial, "the accused has deliberately elected to forego his right to have guilt or innocence determined by the first trier of fact." *Id*. at 596.

In *State v. Mounce*, our supreme court held that double jeopardy will not bar a subsequent prosecution "when a defendant chooses not to object to the mistrial and give the trial court an opportunity to correct the error" because, in that situation, the defendant's consent may be

---

[1] A manifest necessity exists "only when there is no feasible and just alternative to halting the proceedings." *State v. Mounce*, 859 S.W.2d at 322. We are unable to discern any necessity for the Division 5 judge's decision to transfer this case back to Division 8.

inferred.  *State v. Mounce*, 859 S.W.2d at 323.  The court explained its rationale for this holding:

> [T]he rationale for requiring an objection to a mistake is that it gives the trial judge an opportunity to cure a situation that one or both parties perceive to be in error.  A party ought not be permitted to stand silently by while the trial court commits an error in procedure, and then later rely on that error when it is to his advantage to do so.  This is why there is precedent dating back to the last century holding that if an accused fails to object to the jury's discharge upon a defective verdict, he is viewed as having waived the right not to be put on trial again.  *State v. Ragsdale*, 78 Tenn. 671, 672 (1882); *see also*, *Waddle v. State*, 112 Tenn. 556, 82 S.W. 827 (1904) (absence of an objection to the discharge of the jury equates to a waiver).

*State v. Mounce*, 859 S.W.2d at 323.

We conclude that the foregoing rationale applies to the facts of this case and, thus, that the Husband has waived his double jeopardy claim.  When the Division 5 trial judge announced, apparently *sua sponte*, that she was transferring these contempt proceedings back to Division 8, the Husband chose to remain silent at a time when he could have objected to the action taken by the judge.  Under these circumstances, the Husband's consent to the procedure employed could be inferred, and double jeopardy did not bar the subsequent criminal contempt proceeding conducted in Division 8.  *State v. Mounce*, 859 S.W.2d at 322-23.

When the proceedings resumed in Division 8, the Husband suggested that the Division 5 trial judge did not give him the opportunity to make a timely objection to the transfer; however, our review of the record does not support such a suggestion.  The following exchange took place when the Division 5 trial judge announced that she was transferring the case back to Division 8:

> THE COURT:  This Court is of the opinion that post-divorce matters, especially in a situation such as this one, are more properly heard by the judge who heard the divorce, and this -- and Division 5 is transferring this back to Division 8, which is now in a posture to accommodate the parties.
>
> [WIFE'S COUNSEL]:  You mean today?
>
> THE COURT:  I mean immediately.  I mean right this moment.

[WIFE'S COUNSEL]:  Okay.  Thank you, Your Honor.

THE COURT:  Hand me the jacket, please.

This exchange reveals that the Wife's counsel had time to ask the trial judge two, albeit brief, questions concerning its transfer of the case back to Division 8. Under these circumstances, the Husband's counsel at least could have registered a brief objection to the trial judge's action.

### III.  Denial of Husband's Demand for Jury Trial

Having concluded that the Husband waived the defense of double jeopardy, we next must address the contention that the trial court erred in denying the Husband's demand for a jury trial. As an initial matter, we reject the trial court's finding, and the Wife's argument on appeal, that the Husband effectively waived his demand for a jury trial. Any such waiver by the Husband was conditioned on a trial being conducted on all of the issues in Division 5. After the Division 5 trial judge *sua sponte* transferred the case back to Division 8, the Husband timely renewed his demand for a jury trial.

Nevertheless, we affirm the trial court on this issue because we conclude that the Husband did not have a right to a jury trial in these criminal contempt proceedings. The Tennessee Constitution provides that "the right of trial by jury shall remain inviolate." Tenn. Const. art. I, § 6. This constitutional provision "preserves the right of trial by jury as that right existed at common law insofar as that law had been adopted and was in force in North Carolina when the territory embraced in Tennessee was ceded by North Carolina to the United States government." *State v. Dusina*, 764 S.W.2d 766, 768 (Tenn. 1989). Applying this provision, our supreme court has held that a defendant accused of a violation of a general criminal statute has the right to a jury trial if the possible punishment for the offense includes a fine of more than $50.00 or any confinement. *Id*.; *see also Willard v. State*, 130 S.W.2d 99, 100 (Tenn. 1939).[2]

---

[2]This holding is consistent with rule 23 of the Tennessee Rules of Criminal Procedure, which provides that, "[i]n all criminal cases except small offenses, trial shall be by jury unless the defendant waives a jury trial in writing with the approval of the court and the consent of the district attorney general." Tenn. R. Crim. P. 23. In Tennessee, the term "small offense" traditionally has been defined "as one in which the punishment cannot exceed a fine of $50.00 and which carries no confinement in a jail or workhouse." *Brown v. Latham*, 914 S.W.2d 887,

Although the punishment for criminal contempt may include the confinement of the accused, the supreme court and this court have held that no right to a jury trial exists in criminal contempt proceedings. *Taylor Implement Mfg. Co. v. United Steelworkers*, 410 S.W.2d 881, 884 (Tenn. 1966), *rev'd on other grounds sub nom.*, *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216 (1968); *Pass v. State*, 184 S.W.2d 1, 3 (Tenn. 1944); *Robinson v. Gaines*, 725 S.W.2d 692, 694 (Tenn. Crim. App. 1986), *overruled on other grounds by State v. Dusina*, 764 S.W.2d 766 (Tenn. 1989). In holding that no such right exists, the supreme court explained:

> "The general rule is that a constitutional guaranty of jury trial does not apply to proceedings to punish for contempt of court whether in a court of law, a court of equity, a court having criminal jurisdiction, or other court. Punishment for contempt may be summary whether the contempt is direct or indirect, civil or criminal, whether the contempt consists in disobedience of an order of the court, insult, or in other conduct or omission, whether the acts constituting the contempt constitute also infractions of the criminal law, although of the grade of felony and whether imprisonment or fine is imposed or indemnity of an adverse party is decreed. Due process does not require a jury trial in such a proceeding." 31 Am. Jur., sec. 31, p. 579; *District of Columbia v. Colts*, 282 U.S. 63, 51 S. Ct. 52, 75 L. Ed. 177, 185; *In re Debs*, 158 U.S. 564, 565, 15 S. Ct. 900, 39 L. Ed. 1092.
>
> "* * * For while it (the power to punish for contempt) is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. * * *
>
> "There has been general recognition of the fact that the courts are clothed with this power, and must be authorized to exercise it *without referring the issues of fact or law to another tribunal or to a jury in the same tribunal*. * * *" (Emphasis ours.) *Gompers v. Buck's Stove & R. Co.*, 221 U.S. 418, 450, 31 S. Ct. 492, 501, 55 L. Ed. 797, 809, 34 L.R.A., N.S., 874.

*Pass v. State*, 184 S.W.2d at 3. If this holding is still the law, the Husband in this case had no right to a jury trial. The Husband insists, however, that he was entitled to a jury trial in these criminal contempt proceedings because one of the punishments included his incarceration.

This court has specifically rejected this argument, reasoning that:

_____

889 (Tenn. 1996).

We could not agree that courts have the unlimited power to punish respondents for criminal contempt without giving them a jury trial. We are convinced that one reason why a jury trial was not granted for criminal contempt by the common law at the time this state adopted its constitution was the relatively minor punishment the courts imposed for each conviction. As Justice Goldberg said in his dissent in *U.S. v. Barnett*, 376 U.S. 681, 84 S. Ct. 984, 12 L. Ed. 2d 23 (1964),

> "My research, which is confirmed by the authorities cited in the appendix to the opinion of the Court, suggests the following explanation as to why criminal contempts were generally tried without a jury at the time of the constitution: the penalties then authorized and imposed for criminal contempts were generally minor; and the courts were authorized to impose minor criminal penalties without a trial by jury for a variety of trivial offenses including, but not limited to, criminal contempts.

> At some point on the punishment scale the court's power in criminal contempt cases would clash with the respondent's right to a jury trial. [Footnote omitted].

> On the other hand, we do not think the clash occurs at a point on the scale where *any* incarceration is threatened. Although criminal contempt is a crime, for constitutional purposes, it is not the same as a violation of the criminal law. . . . "The proceeding in contempt is for an offense against the court as an organ of public justice, and not for a violation of the criminal law." *State v. Howell*, 80 Conn. 668 at ----, 69 A. 1057 at 1058 (1908). "Contempt proceedings are *sui generis* -- neither a civil action nor a criminal prosecution as ordinarily understood." *Bowdon v. Bowdon*, 198 Tenn. 143 at 146, 278 S.W.2d 670 at 672 (1955). Thus, a defendant may be jailed for criminal contempt without a trial by jury, but the same defendant may demand a jury trial in a charge of violating a criminal statute if the statute provides that incarceration is one of the choices for punishment.

*Brown v. Latham*, No. 01A01-9401-CV-00008, 1994 WL 570102, at *2 (Tenn. App. Oct. 19, 1994), *aff'd on other grounds*, 914 S.W.2d 887 (Tenn. 1996).

In light of the foregoing authorities, we continue to adhere to the holding that a defendant is not entitled to a jury trial in a criminal contempt proceeding in Tennessee. We recognize that, in affirming this court's opinion in *Brown v. Latham*, our supreme court found it unnecessary to address this issue. *Brown v. Latham*, 914 S.W.2d 887, 889 (Tenn. 1996). We also recognize that, in deciding a defendant's right to a jury trial under the federal constitution, the United States Supreme Court has abandoned the distinctions traditionally made between criminal contempt and other criminal offenses and instead has examined the seriousness of the penalty for the criminal

contempt charged. *Bloom v. Illinois*, 391 U.S. 194 (1968).[3] We are constrained, however, to follow the prior supreme court decisions of this state holding that no such right exists under the Tennessee Constitution. *Estate of Schultz v. Munford, Inc.*, 650 S.W.2d 37, 39 (Tenn. App. 1982).

Citing *Brown v. Latham*, the Husband alternatively contends that he was entitled to a jury trial because, in addition to being found in criminal contempt pursuant to the contempt statute (*see* T.C.A. § 29-9-102 (1980)), he also was convicted of the criminal offense of failing to comply with a child support order. *See* T.C.A. § 36-5-104(a) (1996). In *Brown v. Latham*, our supreme court held that section 36-5-104(a) defined a criminal offense and that a defendant charged thereunder was entitled to a jury trial. *Brown v. Latham*, 914 S.W.2d at 888. Our review of the pleadings and the judgment in this case, however, reveals that the Husband never was charged with or convicted of a criminal offense under section 36-5-104(a).

The Husband suggests that he must have been tried and convicted under section 36-5-104(a) because he was sentenced to 180 days incarceration for failing to comply with the court's child support order. Section 36-5-104(a) authorizes a punishment of up to six months imprisonment, while section 29-9-103(b) authorizes a punishment of only ten days imprisonment. *See* T.C.A. § 36-5-104(a) (1996); T.C.A. § 29-9-103(b) (1980 & Supp. 1996). Unlike the trial court's findings with regard to the Husband's failure to pay alimony, the court's order neither specifies the number of instances in which the Husband was found to be in contempt for failing to pay child support nor the sentence for each contempt. Accordingly, we are unable to determine how the trial court calculated the Husband's sentence for failing to comply with the final decree's child support provisions.[4] In any event, we note that the Husband has not challenged the length of his sentence on appeal.

_____

[3]Following *Bloom v. Illinois*, the United States Supreme Court held that the federal constitution did not guarantee a jury trial to defendants charged with criminal contempt in Tennessee because the maximum penalty was ten days and, thus, criminal contempt in Tennessee was considered a petty offense. *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 219-20 (1968). The Court also noted that a sentence as long as six months would qualify the criminal contempt as merely a petty offense. *Id*. at 220. Our analysis of the Husband's right to a jury trial in this case, therefore, is predicated on the right to jury trial provision found in the Tennessee Constitution. *See* Tenn. Const. art. I, § 6.

[4]In addition to showing that the Husband failed to pay his share of the parties' son's orthodontic expenses, the evidence at trial revealed that the Husband failed to pay his share of the children's tuition for the school years 1993-94, 1994-95, 1995-96, and 1996-97.

### IV. Exclusion of Evidence of Bankruptcy Proceedings

Although we affirm the trial court's rulings on the constitutional issues raised by the Husband, we conclude that the trial court committed reversible error when it excluded evidence of the Husband's prior bankruptcy proceeding. In order to support a judgment for contempt based on a defendant's violation of a prior court order, the defendant's disobedience or resistance to the court order must have been willful. *Haynes v. Haynes*, 904 S.W.2d 118, 120 (Tenn. App. 1995); T.C.A. § 29-9-102(3) (1980). We agree with the Husband's contention that the proffered evidence was relevant because, if proven, it tended to show that the Husband did not willfully violate the trial court's previous order relative to the Husband's alimony obligation.

If a debt constitutes alimony, maintenance, or support payments to a debtor's spouse, former spouse, or child, the debt is not dischargeable in bankruptcy; however, if the debt is a property settlement, it is dischargeable. *Kimbrough v. Helton*, No. 01A01-9507-CH-00318, 1996 WL 474427, at *3 (Tenn. App. Aug. 21, 1996) (citing 11 U.S.C. § 523(a)(5)(B)). If the Husband can show that, based on the prior bankruptcy proceedings, he reasonably believed that his obligation to the Wife was in the nature of a property settlement rather than alimony, maintenance, or support payments and, further, that he reasonably believed this obligation was discharged in bankruptcy, the Husband might have a valid defense to the Wife's charge of criminal contempt.[5] *See American Cyanamid Co. v. Rogers*, 314 N.E.2d 679, 682 (Ill. App. Ct. 1974) (noting that discharge in bankruptcy may establish affirmative defense to contempt charge); *see also Crabtree v. Crabtree*, 716 S.W.2d 923, 925-26 (Tenn. App. 1986) (holding that trial court erred in excluding appellant's testimony as to her state of mind when she violated previous court order because such evidence was relevant to appellant's defense to contempt charge). Accordingly, we conclude that the trial court erred in sustaining the Wife's objections to the Husband's testimony on this possible defense.

We recognize that the trial court heard much of the proffered evidence on this subject

---

[5]We recognize that the Husband's corporation, M.S.I., was jointly and severally liable for the alimony obligation to the Wife and that the Husband's personal bankruptcy did not extinguish the corporation's liability. At trial, however, no evidence was introduced to show that the corporation had the ability to satisfy the obligation. To the contrary, the Husband testified that the corporation was losing money and that the I.R.S. had filed tax liens against the corporation's assets.

and that the court was aware of the prior bankruptcy proceedings. The trial court's rulings made clear, however, that the court was refusing to consider any evidence of the bankruptcy proceedings because it considered the evidence to be irrelevant.[6] Inasmuch as the proffered evidence related directly to the Husband's defense to the contempt charge, we cannot conclude that the trial court's error in excluding the evidence was harmless and, thus, we find it necessary to reverse the contempt order as it pertains to the Husband's failure to pay alimony to the Wife. *See Crabtree v. Crabtree*, 716 S.W.2d at 925-26; T.R.A.P. 36(b). We stress, however, that our holding on this issue does not affect the trial court's order of contempt with regard to the Husband's failure to pay child support. On appeal, the Husband does not contend that the prior bankruptcy proceedings were relevant to his child support obligation.

### V. Conclusion

That portion of the trial court's judgment finding the Husband in criminal contempt for failing to pay alimony to the Wife is reversed, and this cause is remanded for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed. Costs of this appeal are taxed one-half to the Husband and one-half to the Wife, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)

_____

[6]In its judgment of contempt, the trial court ruled that the MDA "speaks for itself" and that "all payments required of [the Husband] to [the Wife] as alimony *in solido* are deemed to be necessary and reasonable support and maintenance." Neither party challenges the trial court's ruling that this obligation constituted support and maintenance. We note, however, that the MDA's description of the obligation was not determinative of the nature of the debt or its dischargeability in the subsequent bankruptcy proceedings. *LeMasters v. Ross*, No. 01A01-9702-CV-00070, 1997 WL 717237, at *3 (Tenn. App. Nov. 19, 1997) (citing *In re Chism*, 169 B.R. 163, 169 (Bankr. W.D. Tenn. 1994)); *In re Presler*, 34 B.R. 895, 897 (Bankr. M.D. Tenn. 1983).